UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
**Case No. 25-1703**

WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION, a Michigan Nonprofit Corporation (WOMP); BOWERS HARBOR VINEYARD & WINERY, INC, a Michigan Corporation; BRYS WINERY, LC, a Michigan Corporation; CHATEAU GRAND TRAVERSE, LTD., a Michigan Corporation; GRAPE HARBOR INC., a Michigan Corporation; MONTAGUE DEVELOPMENT, LLC, a Michigan limited liability company; OV THE FARM LLC, a Michigan liability company; TABONE VINEYARDS, LLC, a Michigan liability company; TWO LADS, LLC, a Michigan liability company; VILLA MARI, LLC, a Michigan liability company; WINERY AT BLACK STAR FARMS LLC, a Michigan liability company; CHATEAU OPERATIONS, LTD, a Michigan Corporation,

        Plaintiffs/Appellees/Cross-Appellants, (25-1754)

v.

TOWNSHIP OF PENINSULA, MI, a Michigan Municipal Corporation
        Defendant/Appellant/Cross-Appellee, (25-1703)

PROTECT THE PENINSULA, INC.
        Intervenor/Appellant. (25-1705)

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
USDC NO.: 1:20-cv-1008 (Hon. Paul L. Maloney presiding)

---

**DEFENDANT-APPELLANT/CROSS-APPELLEE PENINSULA TOWNSHIP'S CORRECTED FIRST BRIEF ON APPEAL**

Bogomir Rajsic, III
Thomas J. McGraw
Tracey R. DeVries
MCGRAW MORRIS MASUD
Attorneys for Defendant-Appellant/Cross-Appellee Peninsula Township
44 Cesar E. Chavez Avenue SW, Ste 200
Grand Rapids, MI 49503
(616) 288-3703
brajsic@mcgrawmorris.com

# CORPORATE DISCLOSURE

Appellant has no parent corporation and is not a publicly held corporation owning 10% or more of stock of a party. FRAP 26.1(a).

# TABLE OF CONTENTS

CORPORATE DISCLOSURE ................................................................. i
TABLE OF AUTHORITIES ............................................................... iv
STATEMENT IN SUPPORT OF ORAL ARGUMENT ...................... vii
STATEMENT OF JURISDICTION......................................................... 1
STATEMENT OF ISSUES .................................................................... 2
STATEMENT OF THE CASE................................................................ 3
I.   HISTORY OF THE PENINSULA TOWNSHIP ZONING ORDINANCE....... 4
   A. Plaintiffs' Individual Land-Use History........................................ 7
      1.  Plaintiffs operating as a "Use by Right". ................................ 7
      2.  Wineries operating under an SUP. ........................................ 9
   B. Procedural History........................................................................ 14
      1.  Pre-PTP intervention phase. ................................................ 14
      2.  PTP intervention and partial reset. ...................................... 15
      3.  Post-intervention dispositive motion practice. ...................... 16
      4.  Trial and post-trial proceedings........................................... 18
SUMMARY OF THE ARGUMENT .................................................... 19
LAW AND ARGUMENT ................................................................... 23
I.   PLAINTIFFS FAILED TO ACHIEVE FINALITY ON THEIR
     REGULATORY TAKINGS AND AS-APPLIED CONSTITUTIONAL
     CLAIMS BEFORE FILING SUIT, DEPRIVING THE COURT OF SUBJECT
     MATTER JURISDICTION OVER KEY CLAIMS. ...................................... 23
   A. Plaintiffs Filed Suit Before Obtaining A Final Decision From The Township
      Regarding The Application Of The Regulations To Their Properties,
      Depriving The Court Of Subject Matter Jurisdiction Over Plaintiffs'
      Regulatory Takings And As-Applied Claims. ............................... 25
II.  THE TRIAL COURT ERRED IN CONCLUDING THE TERM "GUEST
     ACTIVITY USE" WAS UNCONSTITUTIONALLY VAGUE. ...................... 28
   A. The GAU Provisions Do Not Implicate A Substantial Amount Of
      Constitutionally Protected Conduct.............................................. 30
   B. The GAU Provisions Provide Fair Notice And Do Not Authorize Or
      Encourage Arbitrary And Discriminatory Enforcement. ................ 33
      1.  Fair Notice ......................................................................... 33
      2.  Arbitrary Enforcement ....................................................... 35
III. THE DISTRICT COURT ABUSED ITS DISCRETION IN STRIKING THE
     TOWNSHIP'S REBUTTAL DAMAGES EXPERT REPORT AND
     REFUSING TO ALLOW THE TOWNSHIP TO PRESENT AN EXPERT TO
     COUNTER PLAINTIFFS' DAMAGES CLAIM, LEADING DIRECTLY TO
     THE $49.2 MILLION DAMAGES AWARD. .......................................... 41

IV. THE DISTRICT COURT ERRED IN AWARDING DAMAGES TO
    PLAINTIFFS. .......................................................................................48
  A. The District Court Erred By Failing To Consider Causation Before
     Awarding Damages Under Section 1983. ...................................................50
  B. The District Court Sustained An Objection To The Relevance Of Event
     Hosting Damages At Trial, Then Awarded $49.2 Million In Event Hosting
     Damages. .....................................................................................54
  C. Mr. Larson's Methodology Did Not Adhere To Industry Requirements, And
     Was Flawed And Unreliable . .........................................................56
    1. Mr. Larson failed to plan or supervise data collection processes in violation
       of AICPA standards. ....................................................................57
    2. Mr. Larson failed to obtain sufficient relevant data....................................58
    3. Mr. Larson used only RMA data, violating RMA's own guidance against
       such exclusive reliance. ...............................................................59
  D. Plaintiffs Failed To Offer Any Objective Facts Or Data Showing That They
     Could Profitably Engage In The Large Event Business................................61
  E. Gross Profit Is Not The Proper Measure Of Damages And Plaintiffs Failed
     To Offer Any Evidence Of Net Profit. ...........................................65
V. THE DISTRICT COURT ERRED BY GRANTING PLAINTIFFS
    SUMMARY JUDGMENT ON THE TOWNSHIP'S STATUTE OF
    LIMITATIONS AFFIRMATIVE DEFENSE AND PRECLUDING THE
    TOWNSHIP FROM PRESENTING THE ISSUE AT TRIAL. .....................69
VI. THE DISTRICT COURT ERRANTLY FAILED TO CONSIDER THE
    TOWNSHIP'S LACHES DEFENSE AFTER TRIAL. ...................................73
VII.   ON SUMMARY JUDGMENT AND FOLLOWING TRIAL, THE
    DISTRICT COURT INCORRECTLY CONCLUDED THAT THE PTZO
    VIOLATED PLAINTIFFS' FIRST AMENDMENT RIGHTS UNDER
    THREE DIFFERENT THEORIES. ...............................................76
VIII.   THE DISTRICT COURT ERRED BY GRANTING SUMMARY
    JUDGMENT TO PLAINTIFFS ON THEIR DORMANT COMMERCE
    CLAUSE THEORY. ...................................................................78
IX. THE DISTRICT COURT ERRED IN CONCLUDING THAT TWO
    SECTIONS OF THE PTZO ARE PREEMPTED BY THE MICHIGAN
    LIQUOR CONTROL CODE. ..................................................78
CONCLUSION AND RELIEF REQUESTED ......................................78
CERTIFICATE OF COMPLIANCE FRAP 32(g)...............................80
CERTIFICATE OF SERVICE ........................................................80
DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............81

TABLE OF AUTHORITIES

## Cases

*600 Marshall Entertainment Concepts, LLC v. City of Memphis*, 705 F.3d 576 (2013) ................................................................................................39

*A to Z, Inc. v. City of Cleveland*, 281 Fed. Appx. 458 (6th Cir. 2008) ...................70

*Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623 (6th Cir. 1987) ..............23

*Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002) ........................................................23

*Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007) ...............................................................................................30

*Avient Corp. v. Westlake Vinyls, Inc.*, 145 F.4th 662 (6th Cir. 2025) ............. 29, 70

*Basista Holdings, LLC v. Ellsworth Twp.*, 710 Fed. Appx. 688 (6th Cir. 2017) .....72

*Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553 (6th Cir. 1999) ................................................................................................ 29, 32

*Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205 (6th Cir. 2019) .................... 45, 47

*Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381 (6th Cir. 2005) ........................32

*Boutilier v. INS*, 387 U.S. 118 (1967) ........................................................... 34, 35

*Bridgeport Music, Inc. v. Juston Combs Pub.*, 507 F.3d 470 (6th Cir. 2007) .........74

*Brockert v. Skornicka*, 711 F.2d 1376, 1382 (6th Cir. 1983) .................................36

*Brown v. City of Albion*, 136 F.4th 331 (6th Cir. 2025) .................................. 30, 33

*Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545 (6th Cir. 1995) ................................................................................................67

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,* 447 U.S. 557 (1980) ............................................................................................... 18, 22

*CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612 (3d Cir. 2013) ........... 34, 35

*Contract Design Group, Inc. v. Wayne State University*, 635 F. App'x 222 (6th Cir. 2015) ...................................................................................... 65, 67, 69

*Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007) ........................................70

*Crabbs v. Scott*, 800 Fed. Appx. 332 (6th Cir. 2020) .............................................54

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) .................................56

*Déjà vu of Cincinnati, L.L.C. v. Union Twp. Bd. Of Trustees*, 411 F.3d 777 (6th Cir. 2005) ................................................................................................34

*Dezman v. Charter Twp. of Bloomfield*, ___ Mich. ___, 997 N.W.2d 42 (2023) ...53

*Dickenson v. Cardiac & Thoracic Surgery of E. Tenn. P.C.*, 388 F.3d 976 (6th Cir. 2004) ................................................................................................43

*DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462 (6th Cir. 1996) ...........66

*Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ...... 70, 72

*Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020) ...................................70

*Getman v. Matthews*, 125 Mich. App. 245; 125 N.W.2d 671 (1983) ....................66

*Goldsmith v. Sharrett*, 614 Fed. Appx. 824 (6th Cir. 2015)...................................72

*Granite State Outdoor Advertising, Inc. v. City of St. Pete Beach, FL*, 322 F.Supp.2d 1335 (M.D. Fl. 2004) .........................................................51

*Hill v. Colorado*, 530 U.S. 703 120 S.Ct. 2480 (2000) ................................... 30, 33

*Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015)....................................... passim

*Katz v. Vill. of Beverly Hills*, 677 Fed. Appx. 232 (6th Cir. 2017) .........................72

*Kellogg Co. v. Exxon Corp.*, 209 F.3d 562 (6th Cir. 2000), *cert. denied*, 531 U.S. 944; 121 S.Ct. 340 (2000).........................................................74

*Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997).................70

*Laney Brentwood Homes, LLC v. Town of Collierville*, 144 Fed.Appx. 506, 511 (6th Cir. 2005)............................................................72

*Lawton v. Gorman Furniture Corp.*, 90 Mich. App. 258; 282 N.W.2d 797 (1979)....................................................................66

*Lindke v. Tomlinson*, 31 F.4th 487 (6th Cir. 2022)........................................23

*LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097 (6th Cir. 1995) .............71

*Metropolitan Gov't of Nashville*, 86 F.4th at 714..............................................73

*Midwest Media Prop., L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456 (6th Cir. 2007) 72

*Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010) ................................................................ 24, 27, 28

*Moss v. Columbus Bd. of Educ.*, 98 Fed. Appx. 393 (6th Cir. 2004) ....................71

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)..........................71

*Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803; 123 S.Ct. 2026 (2003)............................................................ 23, 24

*Natron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397 (6th Cir. 2002) ........ 73, 74

*Neuens v. City of Columbus*, 303 F.3d 667 (6th Cir. 2002)....................................40

*North Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008) ...................50

*Pakdel v. City & Cty. of San Francisco*, 594 U.S. 474 (2021)...............................26

*Pittsfield Twp. v. Malcolm*, 375 Mich. 135; 134 N.W.2d 166 (1965)....................53

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 894 F.3d 235 (6th Cir. 2018) ............................................................ 30, 34

*Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007)...........50

*River City Capital, LP. v. Bd. of Cty. Comm'rs*, 491 F.3d 301 (6th Cir. 2007).......24

*Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47; 126 S.Ct. 1297 (2006)....32

*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th Cir. 2014) .............43

*Sharpe v. Cureton*, 319 F.3d 259 (6th Cir. 2003) ...................................................72

*Sokol v Akron Gen. Med. Ctr.*, 173 F3d 1026 (6th Cir. 1999)................................43

v

*Southern States Rack & Fixture, Inc. v Sherwin-Williams Co.*, 318 F3d 592 (4th Cir. 2003) ................................................................................................43

*Stough v. Mayville Cmty. Sch.*, 138 F.3d 612 (6th Cir. 1998) ......................... 42, 48

*Texas v. Johnson*, 491 U.S. 397; 109 S.Ct. 2533 (1989) ........................................32

*Thatcher Enterprises v. Cache Cnty Corp.*, 902 F.2d 1472 (10th Cir. 1990) .........75

*Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934 (6th Cir. 1999)................72

*Tree of Life Christian Schs. v. City of Upper Arlington, Ohio*, 905 F.3d 357 (6th Cir. 2018)................................................................................................40

*United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1 (2008) .....................75

*United States v. Elder*, 90 F.3d 1110 (6th Cir. 1996) ...................................... 77, 78

*United States v. O'Brien*, 391 U.S. 367; 88 S.Ct. 1673 (1968)..............................32

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982)................................................................................... 30, 31, 34

*Wallace v. Kato*, 549 U.S. 384, 127 S. Ct. 1091 (2007)........................................70

*Westborough Mall, Inc. v. Cape Girardeau*, 953 F.2d 345 (8th Cir.1991)............50

*Williamson County Reg. Planning Com. v. Hamilton Bank of Johnson County,* 473 U.S. 172 (1985)................................................................................. 24, 25

## Statutes

MCL  125.3605 ........................................................................................................26

Michigan Government Tort Liability Act.................................................................17

Michigan Liquor Control Code................................................................................22

## Other Authorities

28 U.S.C. § 1291 .......................................................................................................1

28 U.S.C. §§ 1331 .....................................................................................................1

28 U.S.C. §§ 1367 .....................................................................................................1

42 U.S.C. § 1983 ........................................................................................ 1, 21, 50

## Rules

Fed. R. App. P. 28(i) ......................................................................................... 76, 78

FRCP 37(c) ..............................................................................................................41

Mich. Ct. R. 7.122....................................................................................................26

Rule 12(b)(1)............................................................................................................14

Rule 12(b)(6)............................................................................................................14

Rule 54(b).................................................................................................................16

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Oral argument would assist the Court in resolving the dispositive errors that drove this zoning case to a $49.2 million damages award against a Michigan township of just over 6,000 residents. While the District Court ultimately arrived at the wrong conclusion in nearly all respects, two errors led directly to the unsupported award.

First, the District Court declared isolated provisions in the Township's zoning ordinance vague without conducting a textual analysis of those provisions or considering their fit within the broader zoning scheme. The Court failed to recognize that, as a purely economic land-use regulation, the ordinance warranted the lowest level of vagueness scrutiny. The ordinance neither regulated protected constitutional conduct, nor did it carry the specter of criminal penalties. Rather, the challenged provisions provided permissive uses that allowed Plaintiffs to operate expanded enterprises that otherwise would have been prohibited on agriculturally zoned land. Oral argument would assist the Court in addressing the proper framework for vagueness review in the zoning context, where the regulation is economic and nonpunitive.

Second, after erroneously concluding isolated provisions in the zoning ordinance were vague, the District Court awarded $49.2 million in compensatory damages for gross profits based solely on the invalidation of permissive economic

uses that applied only to a subset of Plaintiffs. In doing so, the District Court failed to engage in a causation analysis that should have ended the inquiry. Plaintiffs sought to invalidate (and recover damages from) the very provisions that granted them expanded permissive uses. Absent those provisions, Plaintiffs' enterprises could not have existed in the agriculturally zoned district at all. The challenged ordinance sections did not cause Plaintiffs' alleged injuries. Even if causation were assumed, the damages award remains legally infirm: the District Court accepted gross profits as the measure of damages for event-hosting businesses Plaintiffs had never operated and for which they presented no evidence of feasibility or viability. Due to the nature of this action, stemming from a long history of zoning regulation and individual zoning approvals, oral argument would assist the Court in evaluating the Plaintiffs' alleged damages and ensures the Court can raise any questions and concerns surrounding the scope of rights authorized under the zoning scheme and the actual land uses each individual Plaintiff was authorized to undertake.

Overall, oral argument will help clarify how the District Court's errors compounded across multiple phases of summary judgment, trial, and ultimately damages – and why reversing and entering judgment in favor of the Township is the appropriate disposition.

# STATEMENT OF JURISDICTION

The District Court had jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331 and 1367 as this case involves federal questions under the United States Constitution and federal civil rights under 42 U.S.C. § 1983 as well as various state-law claims.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 to review the District Court's final judgment that was entered on July 7, 2025. **Judgment, RE 624**. Defendant-Appellants appealed to this Court thereafter. **Notice of Appeal, RE 640**. Plaintiffs' motion to amend the judgment was denied on August 14, 2025. **Opinion, RE 643**.

## STATEMENT OF ISSUES

I.  Did the District Court err when it concluded that Plaintiffs achieved finality on their regulatory takings and as-applied constitutional claims, vesting this Court with subject matter jurisdiction, before filing suit?

II.  Did the District Court err in concluding the term "Guest Activity Use" was unconstitutionally vague?

III.  Did the District Court abuse its discretion when it struck the Township's rebuttal damages expert and refused to allow the Township to present an expert to counter Plaintiffs' damages claim without considering the appropriate legal standard under Rule 37?

IV.  Did the District Court err in awarding $49.2 million in compensatory damages to Plaintiffs?

V.  Did the District Court err when it granted Plaintiffs summary judgment on the Township's statute of limitations defense, which precluded the Township from presenting the issue at trial?

VI.  Did the District Court err when it failed to consider the Township's laches defense based on the proofs presented at trial?

VII.  Did the District Court err when it concluded the Peninsula Township Zoning Ordinance violated Plaintiffs' First Amendment rights under three different theories – prior restraints, compelled speech, and commercial speech?

VIII.  Did the District Court err when it granted summary judgment to Plaintiffs on their dormant Commerce Clause theory?

IX.  Did the District Court err when it concluded that the Peninsula Township Zoning Ordinance was preempted by the Michigan Liquor Control Code?

X.  Did the District Court abuse its discretion when it sharply limited the Township's ability to participate in dispositive motion practice following this Court's 2022 mandate to reconsider the sweeping 2022 summary judgment ruling?

*Defendant-Appellant answers "yes" to all ten questions.*

2

## STATEMENT OF THE CASE

This is a zoning case at its heart. Yet, despite Peninsula Township's (the "Township") best efforts, the District Court never recognized the overall zoning framework and further ignored the specific zoning approvals underlying each Plaintiff's claimed harm. Plaintiffs – wineries operating on agriculturally-zoned land – filed suit to nullify the comprehensive planning and zoning scheme developed through a 40-year iterative and interactive legislative process. That process benefited Plaintiffs greatly, allowing Plaintiffs permissive use to run wineries on their agriculturally zoned land. Without it, their uses would be impermissible.

Plaintiffs' various claims challenge isolated provisions of the Peninsula Township Zoning Ordinance ("PTZO"), including provisions that define winery land uses and authorize limited accessory and support uses.[1] Ironically, Plaintiffs seek to invalidate the very provisions granting the permissive uses that allowed them to successfully operate their expansive enterprises. Instead of appreciating that folly, Plaintiffs and the District Court treated PTZO expanded authorizations for wineries as if it were an unreasonable economic restriction. The result is litigation rife with error, where the District Court struck the authorizations in the PTZO and

---

[1] For ease of reference, the entire PTZO is located at **RE 615-7, PageID ##28513-28676**.

"unshackled" the Wineries, thereby awarding $49.2 million in damages in the process.

The appeal of this zoning case follows.

## I. HISTORY OF THE PENINSULA TOWNSHIP ZONING ORDINANCE.[2]

Plaintiffs are a group of commercial wineries (plus their trade organization "WOMP") that sit on land zoned agricultural in the Township's A-1 Agricultural District ("A-1 District"). Plaintiffs are subject to the PTZO, including, but not limited to, its general regulations, definitions, supplemental regulations, each of their zoning approvals, and site plan approvals for each operation.

In 1968, the Township enacted its original Master Plan, demonstrating an emphasis on preserving the natural character, open areas and preserving agricultural lands and operations. The Master Plan is updated over time, most recently before litigation in 2011. **RE 142-2**.

In 1972, the Township adopted the PTZO establishing the A-1 District, and a separate C-1 Commercial District. As a permissive zoning ordinance, the PTZO provided for limited uses in the A-1 District such as the production, processing and

---

[2] The Township's pretrial brief and proposed findings of fact and conclusions of law provide a comprehensive account of the factual background of the PTZO, the legislative history of the relevant amendments, and each of Plaintiffs' individual land-use histories. **RE 581, 583**. For purposes of brevity in this statement of the case, much has been condensed.

wholesale and retail sales of various agricultural products to maintain the original intention of the district.

However, at the request of the Wineries, the Township amended the PTZO to allow the Wineries to engage in some reasonably restricted commercial activity in the A-1 District. These operations within the A-1 District today have flourished into eleven wineries who chose to open and operate their agriculturally-focused operations within this District. The historical development of the PTZO shows decades of action to maintain the Township's character and preserve agricultural lands. These amendments, adopted over more than a decade from 1989 to 2002, ultimately created three different types of land uses that allowed a land owner to operate a winery. Two of these uses are "special uses" and one is a "use by right".

On December 16, 1989, the Township amended the PTZO through Amendment 79 to allow agriculturally-zoned landowners to obtain a Special Use Permit ("SUP") to operate a land use called a "Winery-Chateau", as set forth in Section 8.7.3(10) of the PTZO and any conditions contained in an applicable SUP. The Winery-Chateau use originated from a request by Bob Begin, the founder of Chateau Chantal. **Tr. Ex. Q, RE 615-8, PageID ##28850-28851**.

On May 12, 1998, the Township again, this time at the request of the Kroupa family (owners of Peninsula Cellars) amended the PTZO to permit agriculturally-zoned landowners to operate a Remote Tasting Room. **Tr. Exs. Ax10, Cx10, RE**

**615-27, PageID ##30485-30487, RE 615-27, PageID ##30493-30495**. This came via Amendment 120 to the PTZO and authorized the use pursuant to an SUP under Section 8.7.3(12) of the PTZO.

On July 9, 2002, the Township adopted Amendment 139 and amended the PTZO to create a "use by right" Farm Processing Facility. Farm Processing Facilities are permitted as a use by right and do not require an SUP, but did require an administrative farm process permit with site plan approval as set forth Section 6.7.2(19) of the PTZO.[3]

After the creation of the Winery-Chateau use, operators continued to seek expanded commercial uses. Through the legislative process, on August 10, 2004, the Township adopted Amendment 141, adding provisions to Section 8.7.3(10)(u) of the PTZO to authorize "Guest Activities" as an authorized support use to approved Winery-Chateau special land uses.

Following the filing of this lawsuit, the Township approved Amendment 201 to the PTZO on December 13, 2022. **Exhibit, RE 444-2, PageID ##15907-15930.** Amendment 201 dramatically revised Section 6.7.2(19), with three new winery uses and removed the prior scope of the Farm Processing Facility, Winery-Chateau, and

---

[3] For ease of reference, Sections 6.7.2(19), 8.7.3(10), and 8.7.3(12) of the PTZO, separated from the entirety of the PTZO, are located at **RE 615-7, PageID ##28677-28692**.

Remote Tasing Room as challenged by Plaintiffs when they filed their First Amended Complaint.

Section 6.7.2(19) – "Farm Processing Facility", has been replaced with Section 6.7.2(19) – "Wholesale Farm Processing Facility". *Id*. Amendment 201 also eliminated Winery-Chateaus from the PTZO through the repeal of Section 8.7.3(10) – Winery-Chateau. A Winery-Chateau use is no longer permitted under the PTZO. As such, prior provisions affecting Winery-Chateaus no longer exist in the PTZO. Section 8.7.3(12) – Remote Tasting Rooms has also been amended through Amendment 201. As such, Section 8.7.3(12) no longer exists in the form challenged by Plaintiffs, and Remote Tasting Rooms now operate under Section 8.7.3(12)(h). ***Id*. at 15929**.

Amendment 201 left Plaintiffs to be governed under the PTZO's nonconforming use provisions.

**A. Plaintiffs' Individual Land-Use History.**

**1.  Plaintiffs operating as a "Use by Right".**

In May, 2007, Two Lads obtained its Preliminary Farm Processing Facility permit, and by October it received its Final Farm Processing Facility Permit. **RE 459-2, PageID #16361; RE 459-3, PageID #16363**. Two Lads never sought to amend its permit and never requested a variance, interpretation, or appealed to the ZBA. **Dep., RE 459-1, PageID #16354; Dep., RE 459-4, PageID ##16367-16368**.

Black Star obtained its Preliminary Farm Processing Permit in March, 2007 and its Final Farm Processing Permit in September. **RE 459-6, PageID #16373; RE 459-7, PageID #16375**. Black Star never sought to amend its permit. **RE 459-1, PageID ##16355-16357**. It never requested an interpretation and never appealed to the ZBA. While Black Star sought and obtained several variances, none relate to sections of the PTZO challenged in this case:

- In 2007, Black Star received a variance to use a non-conforming, pre-existing building for its Farm Processing Facility. **RE 459-8; Dep., RE 459-9, PageID #16386**.
- Later in 2007, Black Star received an exception to §6.7.2(19)(2) to sell wine and permit tastings from grapes grown on the Peninsula but processed at a Black Star facility in neighboring Leelanau County. **RE 459-10**.
- In 2011, Black Star requested a variance to expand the processing and storage area of its facility but rescinded the request. **RE 459-12, RE 459-13**.
- In 2018, Black Star sought more storage space. **RE 459-14**. The Township indicated an amendment to the Zoning Ordinance would be required. **RE 459-15**. Black Star took no further action.

Black Star also operates under a conservation easement held by the Township that strictly prohibits non-agricultural uses. **RE 457-10**.

Tabone is not a Farm Processing Facility; it is permitted to operate as a Food Processing Plant. Tabone's predecessor in interest, J. Josef Vineyards, obtained an SUP in April, 2000 authorizing that use. **RE 459-17**. The SUP was transferred to Tabone in February, 2004 **RE 615-26, PageID ##30443-30444.**

On January 29, 2016, Mario Tabone applied for a "Winery Farm Processing & Tasting Room" structure. **RE 459-18**. On April 27, 2016, the Township advised

the application required additional steps to complete, including an 11-foot setback variance from the required 100-foot side yard variance under § 6.2.7(19)(b)(5). **Email, RE 459-19**.

After applying for the variance and receiving notice of a June 28, 2016 public hearing, Tabone withdrew the request following correspondence explaining that wine tasting would require conversion to a Farm Processing Facility or a Winery-Chateau. **Email, RE 459-20**. Tabone elected to continue operating under SUP No. 73 as a Food Processing Plant. *Id.*

Tabone never sought to amend SUP No. 73, nor did the Township approve Tabone as a Farm Processing Facility. **RE 459-1, PageID #16358**. Other than the withdrawn variance request, Tabone never sought a variance or interpretation from the ZBA. *Id.* SUP No. 73 continues to authorize a "Food Processing Plant". **RE 615-26, PageID ##30443-30444**.

### 2. Wineries operating under an SUP.

OV The Farm, LLC, ("Bonobo") obtained SUP No. 118 to operate as a Winery-Chateau on May 14, 2013. **RE 32-6, PageID #1755-1771**. A November 20, 2014 amendment reflected modifications made during construction but did not change any permitted uses. **RE 463-2; Dep., RE 463-1, PageID #16535**. Since approximately 1997, the property has been encumbered by conservation easements purchased by the Township that prohibit non-agricultural uses. **RE 457-11, 457-12**.

Bonobo never appealed its SUP, sought a variance, or requested a ZBA interpretation. **Dep., RE 463-3, PageID #16559-16560**. At most, in April, 2019, Bonobo requested informal definitions of "Guest Activity", "Entertainment", and "Accessory Use" by email, but filed no application or appeal to the ZBA. **Emails, RE 463-4**.

Bowers Harbor Vineyard & Winery, Inc. ("Bowers Harbor") initially operated as a Food Processing Plant under SUP No. 32 which permitted wine tasting and limited retail sales; it also operated a Roadside Stand, a use permitted by right under § 6.7.2. **SUP, RE 63-6, PageID ##2825-2838**. In 2010, SUP No. 32 was amended primarily to allow limited Open Space Uses consisting of up to 20 outdoor events annually with catered dinners. **SUP Amendment, RE 463-5**.

In 2019, Bowers Harbor transitioned to a Winery-Chateau under SUP No. 132. **RE 63-6, PageID ##2839-2855**. Bowers Harbor has not sought to amend SUP No. 132, nor has it appealed its issuance. **Dep., RE 463-1, PageID #16536**; **Dep., RE 463-6, PageID #16584.** In connection with SUP No. 132, Bowers Harbor received a variance reducing the minimum acreage requirement from 50 to 45.77 acres. **RE 463-7; RE 463-1, PageID #16536**. A second variance request regarding production percentages was withdrawn after Bowers Harbor committed to adding additional plantings. **Email, RE 463-8, RE 63-6, PageID ##2839-2855**.

Brys Estate Vineyard & Winery ("Brys") received SUP No. 115 on February 8, 2011 to operate as a Winery-Chateau. **RE 463-9**. Since issuance, Brys has sought and obtained four amendments:

- April 10, 2012 – First Amendment permitting physical additions to the principal structure, expanded production capacity, outdoor visitor space, and permitting Guest Activity Uses. **RE 463-10**.
- April 8, 2014 – Second Amendment permitting an addition to the tasting room. **RE 463-11**.
- September 25, 2018 – Third Amendment permitting conversion of the Manager's Residence into five guest rooms and construction of a new residence; Brys never proceeded with the conversion. **RE 463-12; Dep., RE 463-13, PageID #16650-16651**.
- December 19, 2018 – Fourth Amendment permitting expansion of the outdoor deck, adding a viewing platform, and remove grape vines to accommodate the expansion. **RE 463-14**.

Brys never appealed or judicially challenged SUP No. 115. ***Id*. at 16538**.

The only variance Brys ever requested or obtained – a temporary structure during residential construction in 2000 – was unrelated to the operation of the winery or the challenged PTZO provisions. **ZBA Decision, RE 463-15**. Brys has never requested a variance or interpretation from the ZBA concerning its winery operations.

Chateau Operations, Ltd. ("Chateau Chantal"), obtained SUP No. 21 in January 1990 to operate as a Winery-Chateau and later SUP No. 95 in December, 2004, which added Guest Activity Uses following PTZO Amendment 141. **RE 463-16; RE 463-17**. SUP No. 95 remains the operative SUP. Subsequent supplements in

2010 and 2014 authorized structural and site improvements without altering the uses permitted in SUP No. 95. Since 2014, no permits have altered the uses allowed under SUP No. 95. **RE 463-1, PageID #16539**.

In 1998, Chateau Chantal litigated the meaning of "registered guest" in SUP No. 21 and agreed to a Consent Judgment. **RE 463-20**. Under the Consent Judgement, Chateau Chantal stipulated to the phrase "registered guests" as used in the Winery-Chateau provisions of the PTZO and in Special Use Permit No. 21. *Id.* Since then, Chateau Chantal has not sought any variances or interpretations from the ZBA. **RE 463-1, PageID #16539; RE 463-21, PageID ##16724-16725**.

Chateau Grand Traverse, LTD, ("CGT") transitioned to a Winery-Chateau under SUP No. 24 in 1990. Since 1990, Chateau Grand Traverse has sought and obtained multiple new and amended SUPs:

- In 1998, the Township approved SUP No. 59 which replaced SUP No. 24. **RE 463-22**. This SUP approved Chateau Grand Traverse to convert an existing single-family structure into the Chateau Building. *Id.*

- In 1999, SUP No. 66 was approved and replaced SUP No. 59. **RE 463-23**. SUP No. 66 approved structural changes and additional rental rooms. SUP No. 66 is Chateau Grand Traverse's operative SUP.

- On September 14, 2004, SUP No. 94 was approved amending SUP No. 66 and authorizing structural changes. **RE 463-24**. There was no change in use. *Id.*

Since Chateau Grand Traverse obtained SUP No. 66, it has not sought any further amendments to its SUP, requested a variance, or submitted a request for

interpretation to the ZBA. **RE 463-1, PageID #16540**. Chateau Grand Traverse has never appealed SUP No. 66 to the Circuit Court.

Montague Development, LLC ("Hawthorne"), operated as a Farm Processing Facility under a permit issued in October, 2013, and transitioned to a Winery-Chateau under SUP No. 135 in 2020. **RE 463-25; RE 463-26**. Hawthorne has not sought an amendment to its SUP, requested a variance, or submitted a request for interpretation to the ZBA. **RE 463-1, PageID #16541**. Hawthorne never appealed SUP No. 135. ***Id.***

Villa Mari, LLC ("Villa Mari"), obtained SUP No. 126 on March 15, 2016 to operate as a Winery-Chateau. **RE 63-10, PageID ##2994-3020**. No subsequent permits have altered the permitted uses, and Villa Mari has not pursued variances, ZBA interpretations, or appealed its SUP. **RE 463-1, PageID #16542**.

Grape Harbor, Inc. ("Peninsula Cellars"), operates a Remote Winery Tasting Room under SUP No. 62 issued on November 10, 1998. **RE 463-27**. No amendments sought or approved since SUP No. 62 was issued. **Dep., RE 463-28, PageID #16778; RE 463-1, PageID ##16543-16544**. Peninsula Cellars has never appealed, sought a variance, or requested a ZBA interpretation. ***Id*. at 16544**.

Peninsula Cellars placed two igloos on its property without first obtaining a Land Use Permit. **RE 463-28, PageID ##16779-16780**. After the Township Board approved igloos as a temporary structure on October 13, 2020 (during the height of

13

the COVID-19 pandemic), Peninsula Cellars applied for and received a Land Use Permit for the igloos. **Meeting Minutes, RE 463-29; 2/9/21 Letter, RE 463-30; Land Use Permit, RE 463-31**.

## B. Procedural History.[4]

Plaintiffs filed this lawsuit on October 21, 2020, challenging multiple provisions of the PTZO regulating permitted zoning uses for wineries and related tasting rooms in the A-1 District: Farm Processing Facilities, Winery-Chateaus, and Remote Winery Tasting Rooms. **Complaint, RE 1**. Plaintiffs pled wide-ranging theories alleging the PTZO was preempted by Michigan law, violated the First Amendment, the Dormant Commerce Clause, was unconstitutionally vague, and constituted a regulatory taking of the liquor licenses.

### 1. Pre-PTP intervention phase.

The Township moved to dismiss several of the claims under Rule 12(b)(1) and 12(b)(6). In response, Plaintiffs amended their complaint. **First Amended Complaint, RE 29**. The Amended Complaint (which remains the operative complaint) asserted ten counts:

- Facial and as-applied claims under the First and Fourteenth Amendments, asserting violations of free speech, freedom of expression, and free exercise of religion (Counts I-III)
- Due process vagueness (Count IV)
- Dormant Commerce Clause violations (Counts V-VI)

---

[4] The procedural history of this case is lengthy and tortured. The Township has endeavored to assemble the most pertinent history for purposes of this appeal.

- Regulatory takings (Count VII)
- State-law conflict preemption (Count VIII)
- Violation of the Michigan Zoning Enabling Act (Count IX)
- Injunctive Relief (Count X)

The Township answered, **RE 35**, and discovery commenced. During early discovery, Protect the Peninsula ("PTP") moved to intervene. **RE 40**. The District Court denied intervention on November 18, 2021 and PTP appealed. **RE 108; RE 121**.

Plaintiffs and the Township proceeded through discovery and filed cross-motions for summary judgment on preemption and the constitutional claims. **Plaintiffs' Preemption Motion, RE 53; Township Response & Cross Motion on Preemption, RE 62; Plaintiffs' Motion on Constitutional Claims, RE 135; Township's Motion on Constitutional Claims, RE 142**.

On June 3, 2022, the District Court issued an omnibus summary judgment Opinion invalidating portions of the PTZO under both state and federal law and enjoined enforcement of certain provisions. **RE 162**. On June 17, 2022, the Township appealed. **RE 164**. The District Court separately enjoined the Township from enforcing any subsection of the PTZO that the Court found to be unconstitutional or contrary to law. **RE 206**. The Township sought to stay the injunction pending appeal, which was denied. **RE 169, 207**.

### 2. PTP intervention and partial reset.

On July 27, 2022, this Court reversed the denial of PTP's intervention. **RE 215**. This Court later vacated the injunction against the Township. **RE 251, 252**.

Both PTP and the Township moved under Rule 54(b) to vacate the June 3, 2022 summary judgment Order. **RE 285; RE 288**. The Township also sought renewed discovery, full participation in dispositive motion practice, and leave to disclose a rebuttal damages expert. **RE 288; RE 292.**

In December, 2022, the District Court resolved these motions. **RE 301, 303**. While acknowledging PTP's intervention changed the landscape, the District Court did not fully reopen summary judgment. Instead, it selectively set aside portions of its prior ruling, allowed PTP to litigate a defined subset of issues, and barred the Township from renewed dispositive motion practice except as to preemption. **RE 301.** The District Court also denied the Township leave to disclose a rebuttal damages expert, errantly applying a "good cause" standard under Rule 16(b). **RE 303**.

### 3. Post-intervention dispositive motion practice.

Following the partial reset, the parties engaged in phased dispositive motion practice.

Plaintiffs, PTP, and the Township all separately moved for summary judgment on preemption. **RE 333; RE 355; RE 443**. On February 29, 2024, the District Court resolved the motions, concluded two sections – §8.7.3(10)(u)(5)(g)

and (i) – were preempted, rejected other preemption challenges, and held the Township was immune from monetary damages for preemption violations under the Michigan Government Tort Liability Act. **RE 525**

Plaintiffs also moved for partial summary judgment on the Township and PTP's affirmative defenses. **RE 439; RE 441**. On March 12, 2024, the District Court resolved the motions. **RE 528**. Among other defenses, the District Court entered "summary judgment" on the Township's statute of limitations and laches defenses.

The Township separately moved to dismiss Plaintiffs' as-applied and regulatory takings claims for lack of subject matter jurisdiction as Plaintiffs failed to achieve finality and that the claims were moot because the challenged ordinance had been repealed and replaced by Amendment 201. **RE 458; RE 462**. The District Court denied the Township's motions. **RE 518**. It concluded further administrative steps would be futile and likely lead to the same dispute returning to court. Accordingly, despite recognizing the lack of strict finality, the District Court held the claims were ripe and allowed them to proceed. The District Court also held the claims were not moot.

Plaintiffs and PTP moved for summary judgment on the remaining constitutional claims. **RE 468; RE 516.** On April 5, 2024, the District Court resolved the outstanding motions. **RE 559.** The District Court granted summary judgment to Defendant on Plaintiffs' freedom of association and regulatory takings claims. On

the First Amendment claims, the District Court rejected Plaintiffs' theory that "agritourism" and hosting events constituted protected speech and granted Defendants summary judgment on content-based challenges and several prior-restraint theories.

However, the District Court granted Plaintiffs' summary judgment on their compelled-speech claims. The District Court also granted Plaintiffs' summary judgment on their prior restraints claim. Finally, the District Court enjoined the sections of the PTZO it found unconstitutional.

### 4. Trial and post-trial proceedings.

This case proceeded to a bench trial on limited issues from April 29, 2024 to May 13, 2024. **RE 589-599**.[5] The issues live for trial were: (1) a partial *Central Hudson* analysis of tailoring; (2) damages; and (3) injunctive relief. Before trial, the parties submitted briefs and proposed findings of fact and conclusions of law. **RE 580, 581, 583**. The parties also submitted post-trial briefing and conducted closing arguments on October 29, 2024. **RE 617, 618, 619**.

On July 7, 2025, the District Court issued its Bench Opinion concluding several sections of the PTZO infringed upon Plaintiffs' commercial speech rights, awarded $49.2 million in damages solely based on Plaintiffs' vagueness theory, but

---

[5] Trial transcripts are designated in the records as **RE 601-608**. Additionally, the parties submitted deposition and discovery designations by stipulation. ***See* RE 611, 612, 615**.

correctly denied Plaintiffs' requested injunctive relief. **RE 623**. Judgement issued the same day. **RE 624**.

This appeal follows.

**SUMMARY OF THE ARGUMENT**

This appeal follows from a series of District Court decisions on summary judgment and following a bench trial that found constitutional violations under multiple theories, invalidated several sections of the PTZO, and awarded $49.2 million in compensatory damages to Plaintiffs – eleven wineries that are zoned agricultural, yet seek unfettered, incompatible commercial uses – in this zoning dispute. The District Court's decisions over several years are infirm on jurisdictional prerequisites, the merits of the claims, and in awarding compensatory damages that are not even causally related to the challenged sections of the PTZO and not tethered to individual zoning approvals for each Plaintiff.

From the outset, the District Court lacked subject matter jurisdiction over Plaintiffs' regulatory takings and as-applied constitutional claims because Plaintiffs failed to achieve finality. They never obtained a final decision regarding the application of the challenged provisions to their land. Rather than pursuing potential administrative remedies (e.g., seeking amended permits, variances, or interpretations of the zoning ordinance), Plaintiffs immediately filed suit. Although the District Court acknowledged Plaintiffs' failure to achieve finality, it nevertheless excused

that jurisdictional failure based on alleged "pervasive enforcement" and informal negotiations between the parties. This is contrary to controlling Supreme Court and Sixth Circuit precedent and deprived the District Court of subject matter jurisdiction under Article III.

The District Court also erred in concluding the term "Guest Activity Use" was unconstitutionally vague. The challenged provisions in Section 8.7.3(10)(u)(2) (and applied only to a small subset of Winery-Chateaus) are narrow economic land-use regulations that do not implicate a significant amount of constitutionally protected conduct. Rather, the GAU provision provides clear notice of the permitted and prohibited activities and contains objective enforcement standards. But rather than analyzing the text of the PTZO, the District Court seized upon alleged confusion by former Township officials in their (mis)understanding of a straightforward provision and invalidated the ordinance.

The District Court's vagueness decision – which it refused to set aside after PTP's intervention – had cascading effects. Indeed, after trial, the District Court concluded that all of Plaintiffs' $49.2 million in damages stemmed from the "vagueness" of the term "Guest Activity Use".[6] But far before trial, the District Court

---

[6] The District Court awarded $49.2 million in damages for enterprises that are already undoubtedly successful in the A-1 District. For example, the owner of Chateau Grand Traverse testified to sales revenue of greater than $7.5 million annually for 2016 to 2020. **Testimony of E. O'Keefe, RE 607, PageID #24825.**

compounded its errors and abused its discretion in striking the Township's rebuttal damage expert report and refusing to permit any expert testimony countering Plaintiffs' damages proofs. On two separate occasions, the District Court failed to consider or apply the appropriate legal standard governing Rule 37 sanctions required by this Court. The exclusion of the Township's rebuttal expert left, as the District Court concluded, the record lopsided on damages and directly contributed to the extraordinary damages award.

The damages decision itself is entirely unsupported by the record and is legally faulty for several reasons. As an initial issue, the District Court failed to consider causation under § 1983. Plaintiffs' alleged damages were not caused by the permissive uses that allowed them to operate commercial uses in the A-1 zone; had the challenged provisions ceased to exist, Plaintiffs would still not be able to host for-profit events because of their agricultural zoning. Had the District Court passed through this initial gate, it still errantly awarded nearly $50 million in damages for speculative lost gross profits for event hosting businesses that some Plaintiffs had never before operated. Contrary to accepted forensic accounting standards, Plaintiffs' expert relied on an attorney-generated "damages matrix" and generalized gross profit multipliers to arrive at his conclusions. The District Court accepted this gross profit analysis which grossly inflated the damages award.

The District Court also improperly granted summary judgment in favor of Plaintiffs on the Township's statute of limitations defense, precluding the Township from putting on proofs that Plaintiffs waited years – and in some cases decades – before filing suit. Plaintiffs' claims are derived from discrete land-use decisions, not continuing violations, and are therefore time barred. In the same vein, the District Court refused to consider the Township's laches defense, claiming it was "waived" when the Township established before trial a rebuttable presumption of laches. Plaintiffs failed to rebut this presumption.

Additionally, the District Court's decisions on Plaintiffs' First Amendment theories – coming on summary judgment and after the bench trial – were erroneous. The challenged provisions are not prior restraints, do not compel speech, and do not unlawfully regulate commercial speech. The District Court, in reaching the opposite conclusion, misapplied the legal standards, disregarded the Township's extensive legislative history, and demanded a level of empirical proof not required by the Supreme Court in the *Central Hudson* context.

Finally, the District Court erred in concluding that certain PTZO provisions violated the dormant Commerce Clause and are preempted by the Michigan Liquor Control Code ("MLCC"). The challenged provisions do not discriminate against interstate commerce and do not mandate local sourcing of grapes. Additionally, the MLCC expressly requires compliance with local zoning and, even if it did not, the

MLCC does not conflict preempt the PTZO because, at most, the PTZO places additional restrictions on what the MLCC permits.

Over a period of several years, the District Court arrived at a host of errant decisions, all of which culminated in an unsupported $49.2 million damages award. This Court should reverse the District Court's liability conclusions against the Township, vacate the unsubstantiated damages award, and direct judgment in favor of the Township.

## LAW AND ARGUMENT

**I. PLAINTIFFS FAILED TO ACHIEVE FINALITY ON THEIR REGULATORY TAKINGS AND AS-APPLIED CONSTITUTIONAL CLAIMS BEFORE FILING SUIT, DEPRIVING THE COURT OF SUBJECT MATTER JURISDICTION OVER KEY CLAIMS.**

Plaintiffs failed to achieve finality on their regulatory takings and as-applied claims prior to filing this lawsuit. The Township moved to dismiss for lack of subject matter jurisdiction (**RE 458, 462**), which the District Court denied. **RE 518**. Such decisions are reviewed *de novo*. *Lindke v. Tomlinson*, 31 F.4th 487, 490 (6th Cir. 2022).

Article III limits the jurisdiction of federal courts to actual cases and controversies. *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (citing *Adcock v. Firestone Tire and Rubber Co.*, 822 F.2d 623, 627 (6th Cir. 1987)). Ripeness encompasses "Article III limitations on judicial power" as well as "prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't*

23

*of Interior*, 538 U.S. 803, 808 (2003) (internal citation and quotation marks omitted). If a claim is unripe, the complaint must be dismissed for lack of subject matter jurisdiction. *River City Capital, LP. v. Bd. of Cty. Comm'rs*, 491 F.3d 301, 309 (6th Cir. 2007).

The Supreme Court in *Williamson County Reg. Planning Com. v. Hamilton Bank of Johnson County,* 473 U.S. 172, 187 (1985) made clear a taking claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the applicability of the regulations to the property at issue." The Sixth Circuit in *Miles Christi Religious Order v. Township of Northville*, 629 F.3d 533 (6th Cir. 2010), explained the ripeness doctrine has now evolved into a "finality" requirement in land-use cases. Indeed, the "insistence on finality" is a foundational prerequisite for any as-applied federal land-use claim:

> To decide whether a dispute has ripened into an action amenable to and appropriate for judicial resolution, we ask two questions: (1) is the dispute "fit" for a court decision in the sense that it arises in "a concrete factual context" and involves "a dispute that is likely to come to pass"? and (2) what are the risks to the claimant if the federal courts stay their hand? *Warshak*, 532 F.3d at 525; *see Abbott Labs.*, 387 U.S. at 149, 87 S.Ct. 1507. In the land-use context, the demands of "a concrete factual context" and "a dispute that is likely to come to pass" converge in an insistence on "finality," an insistence that the relevant administrative agency resolve the appropriate application of the zoning ordinance to the property in dispute.

*Miles Christi*, 629 F.3d at 537.

For land use disputes, finality occurs when the government takes a "definitive position on the issue [that has] inflict[ed] an actual concrete injury." *Pakdel v. City & Cty. of San Francisco*, 594 U.S. 474, 478 (2021) (quoting *Williamson,* 473 U.S., at 193); *See also Cath. Healthcare Int'l, Inc. v. Genoa Charter Twp*., 82 F.4th 442, 448 (6th Cir. 2023).

The Plaintiffs, in the District Court's view, failed to "show that each entity appealed or sought the proper amendments or variances before suing, which could render their regulatory takings and as applied constitutional claims unripe." **RE 518, PageID #20733**. However, pointing to the Township's mere issuance of permits to operate a winery, a handful of pre-enforcement letters, and a pre-suit memo authored by the Wineries, the District Court erroneously concluded that extending the finality doctrine to the present case would be futile. *Id*.

A. **Plaintiffs Filed Suit Before Obtaining A Final Decision From The Township Regarding The Application Of The Regulations To Their Properties, Depriving The Court Of Subject Matter Jurisdiction Over Plaintiffs' Regulatory Takings And As-Applied Claims.**

In this land use dispute, the final decision necessary for finality differs whether the individual Plaintiff winery is a by-right or special land use. Wineries operating under a Special Use Permit, like Winery Chateaus or Remote Tasting Rooms, are subject to the terms of their SUPs and applicable PTZO regulations,

while Farm Processing Facilities, the only by-right winery land use, are subject solely to the latter.

The PTZO affords Plaintiffs the right to appeal enforcement decisions, interpret the Ordinance, or seek variances from the ZBA. **RE 29-1, PageID ##1163-1164**. Should plaintiffs be aggrieved by any final decision of the ZBA, they have the right to appeal that decision to the Circuit Court. *See* Mich. Ct. R. 7.122; MCL 125.3605. *See also Carleton Sportsman's Club v. Exeter Twp.*, 217 Mich. App. 195; 550 N.W.2d 867 (1996). Wineries governed by SUPs may similarly seek amendments via a hearing before the Planning Commission and final decision of the Township Board, with the same right to appeal final decisions to the Circuit Court. Mich. Ct. R. 7.122; *Carleton*, 217 Mich. App. at 200.

However, as the District Court acknowledged, none of the Plaintiffs obtained a final decision regarding the application of the challenged PTZO provisions using the above processes. **RE 518, PageID #20733**. Plaintiffs' failure confirms that their claims were not final for judicial review. The District Court nevertheless relied on alleged "pervasive enforcement" and pre-suit negotiations to support its finding of futility. **RE 518, PageID ##20733-36**. That reasoning misapprehends finality, which requires a definitive position on how the regulations apply to the specific property. *Pakdel v. City & Cty. of San Francisco*, 594 U.S. 474, 478 (2021).

None of the District Court's examples of "enforcement" contain anything close to a definitive position. The correspondence to Bowers Harbor regarding an application for an SUP merely provided information on required application materials and potential violations that could impact the process. **(RE 518, PageID #20734 (citing RE 487-11, PageID #18795))**. It contained zero action by the Planning Commission or Township Board, who had yet to make any determination. The 2021 letter to Peninsula Cellars referencing amplified music restrictions merely provided information about a noise complaint and warnings about SUP violations. **(RE 518, PageID #20735 (citing RE 487-28, PageID #18851))**. At most, both these letters invited Plaintiffs to pursue formal administrative relief.

Moreover, a memo issued by Plaintiffs and informal negotiations are not substitutes for finality. **RE 518, PageID #20736**. The Court's decisions in *Miles Christi* and *Insomnia v. City of Memphis*, 278 Fed. Appx. 609 (6th Cir. 2008), illustrate why: administrative review has the power to clarify the ordinance, grant relief, and narrow disputes. Each of these could potentially eliminate the need for federal review. In *Miles Christi*, the Court reasoned:

> An appeal to the zoning board not only will ground this dispute in a concrete legal setting—by permitting the zoning board to clarify the township's application of its land-use laws to this property—but it also may help Miles Christi. The zoning board may grant a variance to the religious order, or it may provide a different intensive-use determination. Both forms of relief will considerably narrow the grounds of dispute between the parties if not end the dispute altogether.

*Miles Christi*, 629 F.3d at 538. Moreover, as the Court reasoned in *Insomnia*, had the plaintiffs followed the available administrative options, "there is a chance that their proposal [would] be approved" and they would have obtained the result their sought. *Insomnia*, 278 Fed. Appx. at 615. As the Court noted, "[s]uch an outcome would discharge any claim of First Amendment retaliation and obviate the need for federal review. If, however, plaintiffs' renewed plan . . . is rejected, this outcome [would] further define the contours of plaintiffs' claim of First Amendment retaliation." *Id.* at 615-616.

The zoning history demonstrates that formal processes routinely expanded permitted uses. Plaintiffs' failure to invoke those processes confirms the absence of finality; it belies the District Court exercising prudential standing—contravening Sixth Circuit precedent. Because Plaintiffs bypassed available administrative avenues, the District Court erred in denying the Township's jurisdictional challenge. This Court should reverse and dismiss Plaintiffs' as-applied challenges and regulatory takings claim for lack of subject matter jurisdiction.

## II. THE TRIAL COURT ERRED IN CONCLUDING THE TERM "GUEST ACTIVITY USE" WAS UNCONSTITUTIONALLY VAGUE.

Plaintiffs and the Township both moved for summary judgment on vagueness. **RE 135; 142**. The District Court granted Plaintiffs' motion and denied the Township's. **RE 162, PageID #6016-6019**. The District Court refused to reopen the

vagueness issue following PTP's intervention, **RE 301, PageID ##10694-10698**, leaving in place its refusal to consider the text, the prohibited conduct set forth within, or lack of implicated protected speech. Decisions on summary judgment are reviewed *de novo*. *Avient Corp. v. Westlake Vinyls, Inc.*, 145 F.4th 662, 665 (6th Cir. 2025).

Plaintiffs' vagueness claim focuses on the definition of "Guest Activity Use" provided by Amendment 141 to the PTZO in 2004. These provisions were added to address uses for non-overnight guests of the Winery-Chateaus. GAUs are authorized for Winery-Chateaus through SUP approval. **RE 136-3, PageID ##4791-4796**. Plaintiffs allege the term GAU is "unconstitutionally vague because the person of average intelligence cannot tell from the face of the Winery Ordinances what constitutes a 'Guest Activity' prohibited under the Winery Ordinances and cannot govern his or her behavior to comply" with the PTZO. **RE 29, PageID #1121**. Plaintiffs further claim this purported vagueness chills speech and expressive association. ***Id.***

"The Due Process Clauses of the Fifth and Fourteenth Amendments provide the constitutional foundation for the void-for-vagueness doctrine." *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999). To prevail, Plaintiffs must show that the term "Guest Activity Use" either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct

it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S.Ct. 2480 (2000); *see also Brown v. City of Albion*, 136 F.4th 331, 344 (6th Cir. 2025). However, courts do "not require 'mathematical certainty' regarding the precise extent of [a] statute." *Brown*, 136 F.4th at 445. Instead, if "the common meaning of a term makes clear what conduct is prohibited, failure to define the term will not render the statute void for vagueness." *Id*.

Merely because an ordinance may contain some ambiguities does not render it impermissibly vague. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 502 (1982). Courts are mindful that, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972); *see also Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Ct.*, 894 F.3d 235, 246 (6th Cir. 2018). The fact that a law is "marked by 'flexibility and reasonable breadth, rather than meticulous specificity'" does not render it unduly vague. *Grayned*, 408 U.S. at 110 (internal citation omitted).

### A. The GAU Provisions Do Not Implicate A Substantial Amount Of Constitutionally Protected Conduct.

"[T]he degree of vagueness that the Constitution tolerates . . . depends in part on the nature of the enactment." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007) (cleaned up) (quoting *Flipside*, 455

U.S. at 498). Civil laws not implicating the First Amendment are reviewed less stringently than criminal laws "because the consequences of imprecision are qualitatively less severe." *Flipside*, 455 U.S. at 499. Laws that impose criminal sanctions or cover "a substantial amount of constitutionally protected conduct" require a high level of definiteness to withstand a facial due process challenge, *id.* (quoting *Flipside*, 455 U.S. at 494), but, if a law does not fit that description, then a facial challenge will succeed "only if the enactment is impermissibly vague in all of its applications," *Flipside*, 455 U.S. at 495. *Flipside* also reasoned that economic regulations are "subject to a less strict vagueness test". *Id.*

Section 8.7.3(10)(u)(2) lists the only activities eligible as GAUs:

- Wine and food seminars and cooking classes with advance notice, Section 8.7.3(10)(u)(2)(a);
- Meetings of qualifying 501(C)(3) non-profit organizations, Section 8.7.3(10)(u)(2)(b)); and
- Meetings of agricultural related groups with a direct relationship to agricultural production, Section 8.7.3(10)(u)(2)(c)).

Section 8.7.3(10)(u)(2)(d) further imposes detailed operational limits on sound, music, lighting, merchandise, food services, and outdoor activities. **RE 136-3, PageID ##4792-4794**. Notably, the provisions exclude "wine tasting and such related promotional activities as political rallies, winery tours and free entertainment (Example – 'Jazz at Sunset') . . ." and entertainment, weddings, wedding receptions, family reunions or sale of wine by the glass." ***Id.* at PageID ##4792-4793**.

GAUs support Peninsula agriculture by expanding the Winery-Chateau for non-overnight guests (or registered guests) who visit the Winery-Chateau but may not be staying in one of the authorized overnight accommodations. The provisions are economic land-use regulations governing only a singular land use: Winery-Chateaus. They are content neutral by design – focused on expanding permissive activities for non-registered guests. They impose no criminal penalties and do not regulate speech. Accordingly, the lowest level of vagueness scrutiny applies.

Moreover, nothing in these provisions implicates a substantial amount of constitutionally protected conduct. *Belle Maer*, 170 F.3d at 557. The ordinance regulates unprotected conduct, not speech. "The protections of the First Amendment do not generally apply to conduct in and of itself." *Blau v. Ft. Thomas Pub. Sch. Dist.*, 401 F.3d 381, 388 (6th Cir. 2005). The First Amendment protects conduct only when it is "inherently expressive." *Rumsfeld v. F. for Acad. & Inst. Rts., Inc.*, 547 U.S. 47, 66 (2006). Conduct is inherently expressive when it comprehensively communicates its own message without additional speech and would be "understood by those who viewed it" as conveying a message. *Id.* at 66; *Texas v. Johnson*, 491 U.S. 397, 404; 109 S.Ct. 2533 (1989). Without such limitations, "an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376; 88 S.Ct. 1673 (1968).

Section 8.7.3(10)(u)(2) does not regulate speech or expressive conduct. It does not restrict what a winery may say or the message it may communicate. It regulates conduct alone, which is not protected in and of itself. GAUs – seminars, meetings, and agricultural events – are not inherently expressive activities. The ordinance does not regulate what the wineries may say, but what uses may be approved via SUP in "support" of the Winery-Chateau.

## B. The GAU Provisions Provide Fair Notice And Do Not Authorize Or Encourage Arbitrary And Discriminatory Enforcement.

Because the definition of GAUs does not implicate a substantial amount of constitutionally protected activity, the ordinance is subject to the lowest level of vagueness scrutiny. Yet, Plaintiffs failed to show that the term "Guest Activity Use" (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732.

### 1. Fair Notice

Section 8.7.3(10)(u)(2) clearly delineates which uses qualify as GAUs for SUP approval and which do not. A person of ordinary intelligence would understand that GAUs include the uses listed in subsections 8.7.3(10)(u)(2)(a)-(c) and exclude those not listed. This is quintessential fair notice. This Court in *Brown*, made clear when the prohibited conduct that falls outside the scope of a term is clear, failure to further define a term, which is the case here given the three specific uses defined

with GAUs, will not render the ordinance void for vagueness. *Brown*, 136 F.4th at 247. In fact, some of the Plaintiffs had sufficient understanding to identify the scope of GAUs and make application for such uses through the SUP approval process.

As an economic regulation, the GAU provision is entitled to substantial latitude. *See Flipside*, 455 U.S. at 498. As the Supreme Court in *Boutilier v. INS*, 387 U.S. 118, 123 (1967), reasoned, to find an economic civil statute void for vagueness, it must be "so vague and indefinite as really to be no rule or standard at all." Section 8.7.3(10)(u)(2) regulates economic activity, and the subject matter of the GAU provision is exceptionally narrow; it's applicable only to Winery-Chateaus that applied for, and were granted, GAUs by the Township Board via SUP. If any uncertainty existed, a Winery-Chateau could seek guidance or clarification through administrative channels. *Déjà vu of Cincinnati, L.L.C. v. Union Twp. Bd. Of Trustees*, 411 F.3d 777, 798 (6th Cir. 2005). Even if these GAUs "leave some wiggle room", *Platt*, 894 F.3d at 247, when read in the context of the entire GAU provision, Section 8.7.3(10)(u), it is sufficiently clear what the term "Guest Activity Use" means.

The Third Circuit's decision in *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612 (3d Cir. 2013), is instructive. In *CMR*, the plaintiff challenged a zoning ordinance, claiming that the undefined phrase "development appropriate in scale, density, character and use for the surrounding community," was unconstitutionally

vague. The Third Circuit considered the Supreme Court's guidance from *Flipside* and *Boutilier*, and rejected the plaintiff's claims. It was clear that "for the surrounding community" it had an ascertainable meaning. *CMR*, 703 F.3d at 632. Developers only needed to look at "other structures in the immediate vicinity" to determine whether the proposed project was similar to existing construction in "'scale, density, character or use….'" *Id.* Accordingly, the challenged language was sufficient to comply with constitutional requirements. *Id*.

*CMR* noted that the CRO provided – as does the GAU section – the ability to apply for a permit to eliminate ambiguity, a listing of the prohibited and permitted uses, and evaluative factors. *Id*. at 632-633. The *CMR* panel noted, "[i]f a developer of reasonable intelligence faces a close call after analyzing the constructions in the district, it can apply for a permit to eliminate any remaining ambiguity". *Id.* at 632. Importantly, were the GAU provisions affirmed as vague, similar economic regulations that provide the discretionary approval standards for SUPs, planned unit developments, and variances would all have to fail under the District Court's analysis in this case. That is not what the Supreme Court and this Court's precedent demands, which is why reversal is paramount.

### 2. Arbitrary Enforcement

To prevent arbitrary enforcement, laws must provide "explicit standards for those who apply them." *Grayned*, 408 U.S. at 108-109. Sections 8.7.3(10)(u)(2)(a)

and (b) leave no room for discretion. At most, Section 8.7.3(10)(u)(2)(c) allows limited administrative judgment in determining whether a group is agriculturally related, but that discretion is guided by explicit criteria. Even where some discretion exists, "the danger of arbitrary enforcement is not great enough to warrant invalidation". *Brockert v. Skornicka*, 711 F.2d 1376, 1382 (6th Cir. 1983). This section does not "delegate[ ] basic policy matters to policeman, judges, and juries for resolution on an *ad hoc* and subjective basis," as the Supreme Court warned against in *Grayned*. 408 U.S. at 108-109. Instead, the ordinance vests authority in the zoning administrator, who is charged with regularly implementing and managing zoning matters for the Township. *See Brockert*, 711 F.2d at 1382.

At summary judgment, Plaintiffs did not argue that the GAU provisions authorized arbitrary enforcement. Instead, they argued the ordinance was vague because Township representatives allegedly misunderstood it. **RE 136, PageID #4748**. The District Court accepted this argument without analysis of the text of the PTZO, let alone the specific GAU provisions challenged, to determine whether the ordinance was vague. The District Court completely ignored whether there was simply a failure by specific individuals deposed to understand the GAU provisions. Misunderstandings of three Township individuals – one of whom filled an elected position and was not responsible for zoning administration or enforcement, and a second who had no current employment with the Township – cannot be a proper

basis to decide facial vagueness challenges to any zoning ordinance. **RE 162, PageID ##6017-6018**. The GAU provisions were enacted more than 20 years ago, and the legislative record details the extensive consideration employed by past Township officials. **RE 583, PageID ##22803-22811**. It is not uncommon for individuals to not appreciate the nuances of such text two decades later, which is precisely why the District Court is charged with using its interpretative powers to read and discern the text's meaning. The PTZO itself provides for interpretive cannons in Section 3.1, and certainly a term enacted since 2004, and approved via SUP for several Winery-Chateaus' approvals, had meaning.

The District Court, in considering the parties' arguments further, mischaracterized Section 8.7.3(10)(u)(2) as ambiguous by suggesting that it merely "gives examples of Guest Activity Uses that 'may be approved' by the Township Board" but "this language is ambiguous as to whether these activities are the *only* permitted Guest Activity Uses". **RE 162, PageID #6017**. The ordinance states otherwise: "The following Guest Activity Uses may be approved", then the ordinance lists in Section 8.7.3(10)(u)(2)(a)-(c) the GAUs permitted and what is not considered a GAU.

Instead of arguing that a person of reasonable intelligence could not understand the ordinance or that the ordinance authorized arbitrary enforcement (which cannot be the case since it is merely a permissive authorization of expanded

uses to be permitted upon SUP review), Plaintiffs focused entirely on obfuscation and alleged misunderstandings by Township representatives. Plaintiffs' only alleged "ambiguity" was in relation to Plaintiff Bowers Harbor in 2017 when Bowers Harbor was still operating as a "Food Processing Plant" – not a Winery-Chateau. **RE 136, PageID #4750; RE 136-22 to 25**. Bowers Harbor became a Winery-Chateau in 2019. Plaintiffs' entire vagueness argument was based on correspondence and handwritten notes about events it allegedly cancelled in 2017. Moreover, Plaintiffs argue "according to the Township, activities such as wine pairings, vineyard tours, painting classes, happy hours and other similar activities are events which require pre-approval from Peninsula Township." **RE 136, PageID #4750 (citing RE 136-22)**. But the cited document is *not* from the Township; it is a handwritten list of events prepared by Bowers Habor.

Nevertheless, the District Court took the bait. It concluded the "Township has represented that weddings, wedding receptions, entertainment events, and family reunions are not Guest Activities for which a Winery-Chateau needs Township approval, but that wine pairings, vineyard tours, painting classes, and happy hours are Guest Activities that require prior Township approval (*see* **ECF No. 136 at PageID.4750**)." **RE 162, PageID #6018**. The District Court's ruling was based on a faulty premise – that the Township exercised unbridled discretion over approval of a long list of events on a handwritten list provided by Bowers Harbor. This is

simply false, and an improper record to base the meaning of the GAU provisions. The text controls.

Finally, the District Court's analysis of the vagueness claim conflates certain former Township representatives' failure to understand clear ordinance language with vagueness. Nearly the entirety of Plaintiffs' argument was that Section 8.7.3(10)(2) must be vague because the Township representatives did not know what a GAU is. **RE 136, PageID ##4747-4750**. This does not make the ordinance itself vague.

This Court rejected a similar argument in *600 Marshall Entertainment Concepts, LLC v. City of Memphis*, 705 F.3d 576 (2013). In *600 Marshall*, the Court addressed a vagueness challenge to a "Dance Hall Ordinance". But the plaintiff did not challenge any language in the ordinance itself as vague. Rather (like Plaintiffs), it argued that because city representatives failed to understand the ordinance and "bungled its implementation", the ordinance "must be vague". *Id.* at 587. This Court disagreed and noted "the officials' misunderstanding was more likely due to a failure to actually read the Ordinance than to any vagueness inherent in the Ordinance itself. Their confusion did not stem from misinterpreting the language of the Ordinance." *Id.* As the Court noted, "[a]lthough we find it disturbing that city officials demonstrated such confusion regarding the straightforward Ordinance they were

responsible for implementing, 600 Marshall has not shown that the ordinance itself is unconstitutionally vague." *Id.*

That former Township representatives demonstrated confusion regarding Section 8.7.3(10)(u)(2) does not render it vague. Plaintiffs cannot use these individuals' confusion as the basis of their legal burden. *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) (internal citation omitted) (finding district court erred when it "blindly accepted" stipulation that a party was acting under color of law "without engaging in an independent review".). Indeed, "interpreting ambiguous statutory language is a core function of the courts." *Tree of Life Christian Schs. v. City of Upper Arlington, Ohio*, 905 F.3d 357, 370 (6th Cir. 2018).

Moreover, Bonobo's conduct refutes any claim that the GAU provisions were so vague as to provide no fair notice. In 2016, Bonobo received three citations for hosting unauthorized Guest Activity Uses. **RE 457-8, 9**. Bonobo resolved these violations, demonstrating that GAUs had meaning. RE 457-9. In 2019, recognizing this gap, Bonobo submitted an application to amend its SUP to add GAUs as a permitted use. **RE 457-6,7**. A party who acknowledges through its own conduct that it understands the regulatory requirements cannot credibly claim that those same requirements provided no notice to a person of ordinary intelligence.

Chateau Chantal's history further demonstrates that the GAU provisions provided adequate notice. In 1998, Chateau Chantal litigated the meaning of

"registered guest" under its SUP and the zoning ordinance. **RE 463-20**. The resulting Consent Judgment – negotiated by attorneys and entered by the state circuit court – defined "registered guests" as guests registered to stay overnight and established detailed standards governing food service, outside activities, wine tasting, and special events. *Id.* The Township Board adopted these standards in February 1999 as the basis for an amendment to Section 8.7.3(10) – the very amendment that created the GAU provisions in 2004. This is not vagueness – it is voluntary noncompliance.

The District Court's grant of summary judgment to Plaintiffs on the vagueness claim should be reversed and all damages flowing from that claim vacated.

## III. THE DISTRICT COURT ABUSED ITS DISCRETION IN STRIKING THE TOWNSHIP'S REBUTTAL DAMAGES EXPERT REPORT AND REFUSING TO ALLOW THE TOWNSHIP TO PRESENT AN EXPERT TO COUNTER PLAINTIFFS' DAMAGES CLAIM, LEADING DIRECTLY TO THE $49.2 MILLION DAMAGES AWARD.

On July 29, 2022, the Township disclosed to Plaintiffs a rebuttal damages expert, Michael Kahaian. Although disclosed after the expert deadline, the delay was substantially justified under *Howe v. City of Akron*, 801 F.3d 718 (6th Cir. 2015). On August 2, 2022, Plaintiffs moved to strike the report under Rule 37(c). **RE 219.** The next day – before the Township could respond – Magistrate Judge Kent granted the motion in a one-paragraph order that neither cited nor analyzed the governing Rule 37 standard. **RE 222.** The Township timely objected, but the District Court

overruled the objections without applying the *Howe* factors. **RE 284, PageID #10193.**

After this Court's remand and PTP's intervention, the Township moved to disclose Mr. Kahaian. **RE 292.** The District Court denied the request, again without applying *Howe*. **RE 303.** This was not on the eve of trial, nor would it have required reopening completed discovery. The District Court acknowledged the request came "early in the litigation." **RE 623, PageID #31471.**

Indeed, after the District Court barred Mr. Kahaian's testimony, discovery was reopened, additional summary judgment motions were litigated, and trial occurred nearly eighteen months later. The District Court could have imposed a lesser sanction (such as costs involved in deposing Mr. Kahaian, etc.), particularly where the exclusion of rebuttal expert testimony directly contributed to the $49.2 million damages award.

This Court reviews Rule 37(c) sanctions for abuse of discretion. *Howe*, 801 F.3d at 747. A district court abuses its discretion when, among other things, it improperly applies the law or uses an erroneous legal standard. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998).

The District Court abused its discretion by failing on two separate occasions to utilize the appropriate legal standard and, consequently, improperly applied the

law. Rule 37(c) requires courts to determine whether non-disclosure was justified or harmless by applying the *Howe* factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe*, 801 F.3d at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). Although exclusion is "automatic" under Rule 37(c)(1) unless non-disclosure was justified or harmless," *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn. P.C.*, 388 F.3d 976, 983 (6th Cir. 2004), courts **must** analyze the *Howe* factors and determine whether those conditions exist. *Southern States Rack & Fixture, Inc. v Sherwin-Williams Co.*, 318 F3d 592, 597 (4th Cir. 2003) (when performing its analysis under Rule 37(c)(1), the Court recognized that a district court "must consider" the factors identified). The *Howe* factors were not presented as suggestions; consideration was mandatory. "A district court by definition abuses its discretion when it makes an error of law." *Sokol v. Akron Gen. Med. Ctr.*, 173 F3d 1026, 1030 (6th Cir. 1999). The *Howe* factors demonstrate an obligation to review the factors to effectively arrive at a reasoned conclusion under Rule 37, and the failure to consider them, without more, is a reversible error of law. *Id.*; *see also Southern States*, 318 F3d at 597.

Neither the Magistrate Judge nor the District Court did so. Instead, the Magistrate Judge struck the report before the Township could respond. **RE 222**. The District Court then overruled the Township's objections, despite the Township's detailed *Howe* analysis, without once referencing the controlling law. **RE 284, PageID ##10193-10195**. Compounding the error, when the Township later moved to amend the Case Management Order to permit the disclosure, the District Court again ignored *Howe* and instead applied a "good cause" standard. **RE 292; RE 303, PageID ##10838-10842**. That, too, was clear error.

Properly applied, the *Howe* factors overwhelmingly favor the Township because the late disclosure was harmless.

First, there was no meaningful surprise. Mr. Kahaian's report introduced no new data or information. It was pure rebuttal – it attacked the methodology and opinions of Plaintiffs' expert. While the Township did inform Plaintiffs it did not have a "testifying" expert, communication between counsel was clear that the Township had a consulting damages expert that would appear at the deposition of Plaintiffs' damages expert and that Plaintiffs' damages expert's methodology was under scrutiny. **RE 238-1, PageID #8662.** The Joint Final Pre-Trial Order also placed Plaintiffs on notice the Township planned on calling a rebuttal expert witness. **RE 190, PageID #7401.** The first *Howe* factor favors inclusion.

The second and third factors – ability to cure the surprise and potential disruption to trial – both favor the Township. Any surprise was curable between July, 2022 and trial in April, 2024. The Township presented Plaintiffs with a complete expert report and offered to produce Mr. Kahaian for a deposition. While the 2022 trial date (which was adjourned on August 8, 2022) was initially close to the disclosure of Mr. Kahaian's report, when the District Court ultimately struck the report, no trial date was set. Trial did not start for nearly another year and a half. Plaintiffs had more than enough time to cure any alleged surprise through interrogatories, requests for production, and a full discovery deposition. *See Howe*, 801 F.3d at 749.

Similarly, there would have been no disruption to trial. Trial was not scheduled when the District Court overruled the Township's objections, and there was no risk that Plaintiffs would have been forced to forgo trial preparation to respond to the disclosure of Mr. Kahaian's report. Plaintiffs had ample time to prepare. Factors two and three weigh in favor of the Township.

The fourth factor, the importance of the evidence, weighs decisively in favor of the Township. "The more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019) (cleaned up). Here, the proofs were vital and resulted in a cataclysmic trial result. The effect of the District Court's sanction – and

the importance of the stricken testimony – is crystalized in the post-trial Bench Opinion:

> This case presents an unusual scenario. Three things make these damages calculations more difficult than in a typical case. First, only the Plaintiffs retained a damages expert. So naturally, the proofs are lopsided in their favor. When it comes to damages, the Township is limited to attempts at impeachment on cross examination and attorney argument . . . . And third, the Wineries' financial data is not in the record. [**RE 623, PageID #31468**].

Mr. Kahaian's stricken expert report – and his anticipated testimony – would have addressed the District Court's concerns with the difficulty in resolving the damages calculations. His testimony would have substituted in large part for the attorney argument that the Township was left to rely upon. Even without the benefit of a counterbalancing expert, the District Court freely conceded significant issues with Mr. Larson's testimony:

- "[T]he Township also criticized the large (nearly $70 million) discrepancy between Larson's first and second reports. Rightfully so. But Mr. Larson took the stand, explained his discrepancies, and updated his analysis to reflect more accurate figures. Ultimately, these mistakes-early in the litigation-do impugn Mr. Larson's credibility somewhat. The court does not have another damages expert to credit, however. The proofs, which were subject to rigorous cross examination, are the proofs." **RE 623, PageID #31471.**

- "The Township's first, and perhaps best, critique of Larson's report is that he calculated net revenue and not net profits for his damages determination. The Wineries assert that it was not an issue and using gross revenue was proper. The difference between the two calculations can be substantial." ***Id.* at PageID #31472.**

- "Because Mr. Larson's calculations are not a proper fit or reasonable under Schedules 1 and 5, the court declines to award damages for those violations.

These calculations should have been based upon net profits rather than gross revenue." *Id.* **at PageID #31473.**

- "If Mr. Larson had used net profits instead of revenue, there is some substance in the record to support that the damages under Schedules 1 and 5 would be 1/13 of what was proffered. R**E 609, PageID #30926**. The court declines to award damages on that basis alone, however. If that were enough, the Wineries in theory would be entitled to 1/13 the damages proposed under Schedules 1 and 5." *Id.* **at PageID #31473, n.8.**

- Finally, when awarding nearly the entirety of the total $49.2 million in damages based on Schedules 6 and 7, the District Court again relied on Mr. Larson's gross profit methodology, noting "crucially, the court does not have the benefit of proofs to the contrary. The Township did not retain a damages expert." *Id.* **at PageID ##31477-31478.** This is incorrect. The Township *retained* a damages expert; the District Court refused to permit his testimony.

The fifth factor, the non-disclosing party's explanation for its failure to disclose, also weighs in the Township's favor. Here, the Township's failure to disclose "was more likely the result of negligence, confusion, and lack of information than underhanded gamesmanship." *Howe*, 801 F.3d 718 at 749. The goal of the *Howe* factors is to "separate[e] 'honest,' harmless mistakes from the type of 'underhanded gamesmanship' that warrants the harsh remedy of exclusion." *Bisig*, 940 F.3d at 221. The Township's failure to disclose an expert earlier was not "underhanded gamesmanship". Rather, as the Township previously explained to the District Court, it identified the need for a rebuttal expert after securing Mr. Larson's deposition in June, 2022. The *Howe* panel recognized that "lack of information" and "confusion" fall on the opposite end of the continuum from underhanded gamesmanship. The circumstances here are even further from gamesmanship since

the Township, after identifying the need for an expert, provided Mr. Kahaian's report and offered to produce him for deposition. Had the Township intended to prejudice Plaintiffs, they would not have voluntarily produced a report, nor would they have offered a deposition.

Despite this record, the District Court imposed the most severe sanction available. Had the District Court weighed the *Howe* factors, it could have found no need to sanction the Township or that a less severe sanction was available (e.g., ordering the deposition of Mr. Kahaian at the Township's expense). That one remedy would have alleviated many of the additional errors committed by the District Court, set forth in the following sections, that led to such an unreasoned damages award. Instead, the District Court ignored the binding legal precedent *Howe* represents. That failure to apply binding precedent is reversible error. *Stough*, 138 F.3d at 614.

The late disclosure of Mr. Kahaian was harmless, and the District Court erred when it struck him as a Rule 37(c) sanction. The only appropriate remedy is reversal of the District Court's damages award and, if necessary, after the Court's review of the remaining issues in this case, a remand for a new trial at which the Township may present Mr. Kahaian's rebuttal testimony.

## IV. THE DISTRICT COURT ERRED IN AWARDING DAMAGES TO PLAINTIFFS.

The District Court's error in finding liability on vagueness had significant downstream effects – every cent "extend[s] from the vagueness of the [GAU]

provision of the PTZO." **RE 623, PageID #31475**. Therefore, the liability error on vagueness, which was invited by the Wineries, has directly led to additional error when calculating damages: (1) the Court failed to analyze causation under § 1983, overlooking that eliminating the GAU provisions would not entitle all Plaintiffs to host unlimited commercial events; (2) the Court sustained an objection to event-hosting damages at trial, then awarded $42 million under Schedule 7; (3) Plaintiffs failed to introduce any financial documents at trial, rendering all damages speculative; (4) Plaintiffs failed to establish that the large commercial events are feasible and permissible in the A-1 District; and (5) the Court improperly relied on gross profit rather than net profit when calculating damages.

These errors were compounded by Plaintiffs' own flawed presentation through their expert, accountant Eric Larson, who testified that he (1) never attempted to calculate net profits; (2) did not follow accepted AICPA standards when collecting and verifying data; (3) performed no financial or damage analysis, let alone one that complied with RMA standards; and (4) has no expertise in business development, market demand, or the feasibility of the new ventures Plaintiffs sought to operate on their agriculturally-zoned properties.

These unforced errors led the Court to award millions under Schedule 7, damages which it had previously indicated it would not award. These are critical

mistakes that, when corrected, reverse the avalanche of damages facing the Township and its residents.

### A. The District Court Erred By Failing To Consider Causation Before Awarding Damages Under Section 1983.

The damages award is flawed because the District Court failed to analyze causation. Instead, it simply declared the PTZO was "[t]he only barrier" to Plaintiffs' damages.[7] **RE 623, Page ID #31474**. This fundamental error ignored that Plaintiffs' agricultural zoning not the GAU provisions, bars commercial event hosting. This failure requires reversal.

Under § 1983, Plaintiffs must establish a causal connection between the constitutional violation and the damages they seek. *See Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 608 (6th Cir. 2007). Causation requires a showing of both cause in fact and proximate cause. *Id*. Plaintiffs cannot satisfy either requirement because independent barriers break the causal chain and foreclose compensatory damages. *See, e.g.*, *North Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486-497 (9th Cir. 2008). *See also, Westborough Mall, Inc. v. Cape Girardeau*, 953 F.2d 345, 347 (8th Cir.1991) (no damages where venture "was plagued with

---

[7] It is unclear what the District Court means when it says the "PTZO" has been "repealed". The PTZO – which is the Township's zoning ordinance – was not "repealed" by Amendment 201; instead, only sections 6.7.19, 8.7.3(10), and 8.7.3(12) were repealed. This is yet another example of the District Court's imprecision.

problems" before the unconstitutional actions); *Granite State Outdoor Advertising, Inc. v. City of St. Pete Beach, FL*, 322 F.Supp.2d 1335, 1344 (M.D. Fl. 2004) (no damages where permit "would have been rejected anyway" under other requirements).

Each Plaintiff faces individualized barriers. Two Lads received its Final Farm Processing Facility Permit on October 18, 2007 and never sought amendments, variances, or interpretations. **RE 459-3, PageID #16363; RE 459-1, PageID #16354; RE 459-4, PageID ##16367-16368**. Black Star obtained its Final Farm Processing Permit in September 2007 and never requested amendments. **RE 459-7, PageID #16375, RE 459-1, PageID ##16355-16357**. These Farm Processing Facility permits contain no authorization for GAUs and Section 8.7.3(10)(u) applies only to Winery-Chateaus with SUPs. Even if the GAU provisions were struck, Two Lads and Black Star would need to apply for and obtain SUP amendments to host events.

Plaintiffs operating as Winery-Chateaus face similar constraints. Bonobo's SUP No. 118 (May 14, 2013) was amended once, and then only for construction modifications with no change in permitted uses. **RE 463-2; RE 463-1, PageID #16535**. Brys obtained SUP No. 115 on February 8, 2011, **RE 463-9**, and sought four amendments, all for physical additions and none expanding to large-scale event hosting. **RE 463-10, 463-11, 463-12, 463-14**. Bowers Harbor's SUP No. 132, issued

in July 2019, replaced an earlier SUP but has never been amended. **RE 63-6, PageID ##2839-2855; RE 463-1, PageID #16536**. Each Plaintiff's damages are independently limited by their specific permit or SUP, none of which authorize the commercial event hosting for which the District Court awarded $49.2 million.

Plaintiffs focused on redressability rather than causation, **RE 618, PageID ##31107-31109**, ignoring the Township's argument that Plaintiffs could not establish causation. **RE 581, PageID ##22687-22691**. Had the Township repealed the GAU provisions, Plaintiffs would have been in no better position because their properties remain zoned agricultural, and the A-1 District does not permit the commercial enterprises they seek.

Indeed, agricultural zoning remains a separate and independent barrier that precludes causation. The A-1 District is intended to preserve land "presently being used predominantly for farming purposes," allowing only "other limited uses" compatible with agricultural and open-space uses. **RE 29-1, Page ID #1180; § 6.7.1 of PTZO**. Neither A-1 District uses permitted by right nor as special uses permit unfettered commercial activity like for-profit event hosting.

PTZO Section 6.1.4 provides:

> No building or structure, or part thereof, shall be erected, moved, constructed, or altered, and no new use or change in use shall be made unless in conformity with the provision of this Ordinance and with the regulations specified for the district in which it is located.

Ultimately, only uses specifically listed as permissible within the A-1 District are allowed, to the exclusion of all others. This is classic permissive zoning. Commercial uses, including for-profit event hosting, are not listed as permitted uses in the A-1 District, meaning they are impermissible. See, *Dezman v. Charter Twp. of Bloomfield*, ___ Mich. ___, 997 N.W.2d 42 (2023); *Pittsfield Twp. v. Malcolm*, 375 Mich. 135, 142; 134 N.W.2d 166 (1965).

Bonobo and Black Star face additional barriers. The parcels their wineries sit on are burdened by conservation easements under which they sold rights to the Township to limit development and keep the land in agricultural use. **RE 457-10, 457-11, 457-12**. The conservation easements provide that the grantors granted to the Township all development rights not specifically granted in the easement. *Id.* The conservation easements identify uses permitted on conserved land, all of which must be incidental to agricultural uses. There is no right to engage in commercial activity. *Id.*

The District Court awarded nearly $50 million in compensatory damages premised on commercial event hosting – an impermissible use in the A-1 District. Removing the GAU provisions would not eliminate Plaintiffs' alleged injury; Plaintiffs would still be barred from unfettered for-profit event hosting by their A-1 zoning designation, their individual zoning approvals, and the application of conservation easement restrictions that were purchased by the Township. The GAU

provisions were permissive – they allowed event hosting that would otherwise be prohibited in the A-1 District. It was therefore not reasonably foreseeable that these permissive provisions would cause Plaintiffs' alleged harm. *Crabbs v. Scott*, 800 Fed. Appx. 332, 338 (6th Cir. 2020) (proximate cause requires foreseeability). These independent barriers require reversal.

### B. The District Court Sustained An Objection To The Relevance Of Event Hosting Damages At Trial, Then Awarded $49.2 Million In Event Hosting Damages.

The District Court awarded $49.2 million in damages for Schedule 6 and 7 – small and large event hosting. **RE 623, Page ID #31475**. Every penny flowed from the District Court's conclusion that the "Guest Activity Use" provision was vague. *Id.* This post-trial award contradicts the District Court's trial ruling that damages evidence related to "event hosting" was irrelevant. **RE 600, Page ID ##23090-23103**.

During trial, the Township objected that the Court had already ruled event hosting was not protected First Amendment activity and therefore damages evidence was irrelevant. *Id.* The Court asked Plaintiffs' counsel "how is this consistent with my prior ruling?" *Id.* After argument, the Court sustained the objection. *Id.* Despite sustaining the objection, the District Court awarded $49.2 million in event hosting damages. **RE 623, PageID ##31475-31480.** This award is irreconcilable with the trial ruling.

The District Court's ruling dramatically affected the Township's trial strategy. For example, the Township did not introduce Plaintiffs' financial documents because the Court ruled event hosting damages irrelevant. The Township also declined to call a rebuttal witness on event hosting viability. The Township relied on the District Court's ruling. The District Court's inclusion of these damages in light of its trial ruling requires reversal.

The trial court also concluded in its Opinion that only Winery-Chateaus were entitled to Schedule 7 damages because "the Winery-Chateaus were subject to the vague Guest Activity Uses provisions." **RE 623, PageID #31478**. But the Court subsequently awarded Schedule 6 damages to all Plaintiffs despite finding that Farm Processing Facilities were not subject to the GAU provisions. This is contradictory: if damages flow from GAU vagueness, only Plaintiffs subject to GAU's should recover. The District Court correctly concluded Farm Processing Facilities (Black Star, Two Lads, Tabone) and Peninsula Cellars did not have SUPs under Section 8.7.3(10), so only Winery-Chateaus (Bonobo, Bowers Harbor, Brys, Chateau Chantal, CGT, Hawthorne, Mari) were eligible for Schedule 7 damages, **RE 623, PageID #31478**, only to botch the application of that ruling by awarding damages to all.

Even assuming this Court affirms the vagueness finding, reversal and remand is required because the District Court treated all SUP-holding Plaintiffs uniformly.

The District Court ignored that some wineries possessed explicit event hosting authority. For example, CGT's SUP No. 24 (1990) expressly authorized "outdoor functions such as wine tasting parties, festivals, etc." with up to 75 guests, and permitted additional guests with a special permit. **RE 463-22** (SUP No. 59, incorporating prior findings).

The District Court did not treat this as the simple zoning case it is. Each Plaintiff received individualized zoning approvals authorizing specific uses on agriculturally zoned land. The District Court ignored this. Instead, it painted with too broad a brush by failing to examine what each Plaintiff was actually permitted to do under their individual approvals which – combined with its contradictory rulings on the relevance of event hosting damages – render the $49.2 million award legal infirm, requiring reversal.

### C. Mr. Larson's Methodology Did Not Adhere To Industry Requirements, And Was Flawed And Unreliable .

A district court must determine whether expert evidence "both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). An expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Red flags include reliance on anecdotal evidence, improper extrapolation, failure to consider

other causes, lack of testing, and subjectivity. *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009).

Mr. Larson, a CPA, admitted he was required to follow the AICPA Statement on Standards for Forensic Services. **RE 609, PageID #25118**. The AICPA code of professional conduct, specifically Rules 1.300.001 and 2.300.001, require professional competence, due professional care, adequate planning and supervision, and the gathering and use of sufficient relevant data. **RE 615-27 to 615-30, PageID ##30549-30787**. Mr. Larson's work violated these professional standards at every turn.

Mr. Larson's methodology consisted of four steps: (1) he created a blank "damages matrix" spreadsheet; (2) he provided the blank spreadsheet to Plaintiffs' counsel, who filled it in; (3) he blindly accepted counsel's numbers without requesting a single financial document to verify them; and (4) he multiplied those numbers by a gross profit percentage from the RMA website. **RE 609, PageID #25152-25153**. This falls outside professional requirements and lacks any indicia of reliability.

### 1. Mr. Larson failed to plan or supervise data collection processes in violation of AICPA standards.

As an economic damages expert, the sensitivity of the data Mr. Larson used should have been a priority. It is, after all, contained in the rules governing his profession. As it turned out, data integrity was not a priority. Instead, Plaintiffs'

counsel told Mr. Larson the spreadsheet numbers came from the Wineries, and Mr. Larson went along with the trope. Mr. Larson obtained no documents from any Wineries to support the numbers and blindly accepted counsel's assurances. **RE 609, PageID ##25134-25135, 25123-25124, 25143**.

But, Mr. Larson admitted: (1) he gave counsel no instructions on what information to gather, **Id. at PageID ##25122-25123**; (2) he sent no document requests to verify the data, **Id.**; (3) he never reviewed Plaintiffs' financial statements, **Id. at PageID #25123**; (4) he sent no one to meet with Plaintiffs' representatives despite the importance of data integrity, **Id. at PageID ##25123-25125**; (5) he had no idea who compiled the information he considered the "backbone" of his report, **Id. at PageID #25125**; and (6) the only support for the spreadsheet numbers was counsel's assurance they were accurate, **Id. at Page ID ##25143-25144**.

The numbers were not accurate and could not be supported. They consisted of pure speculation about events Plaintiffs might host if they opened event businesses. In fact, winery owners admitted they "purely speculated" when providing numbers, **RE 600, PageID #23103**, but Mr. Larson never questioned how owners could provide accurate numbers for fictional businesses they never operated.

## 2. Mr. Larson failed to obtain sufficient relevant data.

Mr. Larson never requested or reviewed financial information from the Wineries and lacks experience in winemaking or commercial farming that would

make up for that shortcoming. Mr. Larson conducted no market or feasibility analysis, performed no business valuation, and reviewed no financial records, business plans, projections, payroll data, or employee information. He also gathered no information regarding winery facilities, parking, property ownership, debt, loans, grape pricing, or markets for weddings, events, or wine. He did not review Township ordinances or correspondence, USDA or TTB filings, PPP loan applications, winery websites, or any comparable businesses, nor did he recommend that the Wineries obtain any market or feasibility study. **RE 609, PageID ##25101–25118**.

Mr. Larson obtained zero financial documentation from Plaintiffs and has no knowledge of their industry, financial history, projections, or business plans. He made no effort to obtain "sufficient relevant data" as required by AICPA standards, rendering his purported expert opinions unreliable and inadmissible.

### 3. **Mr. Larson used only RMA data, violating RMA's own guidance against such exclusive reliance.**

Mr. Larson boiled his methodology to simple multiplication:

> Q: The only study you did was you took the damage matrix, multiplied it by the RMA data and got the gross profit, right?
> A: The revenues multiplied by the RMA data gives you the profit amount, that's correct.
> Q: And that's the only study you did?
> A: As far as gathering that additional third-party data, that's correct.

*Id*. at ##25152-25123. Instead of gathering data from Plaintiffs or local wineries, Mr. Larson used random data from unknown restaurants at unknown locations, and had no idea where the data came from:

> Q: It could be from a -- I don't know, let's see, it could be from a Red Lobster in Anchorage or a Chi Chi's in Phoenix, right?
> A: It could be.
> Q: You just have no idea.
> A: That's correct.

*Id*. at #25128.

Mr. Larson admitted he used nothing other than RMA data to support his claimed lost gross profits and that the same RMA calculations were used for Schedules 3, 6, and 7. *Id*. at ##25155–25156. It is incomprehensible that an economic expert would fail to obtain historic financial information from eleven wineries and instead rely on generalized RMA data from unidentified establishments in unknown cities and climates. RMA itself cautions that its "Annual Statement Studies" are only "general guidelines" and must supplement other financial analyses, not serve as industry norms. **RE 615-31**.

Mr. Larson conducted no other financial analyses. He did not request historic or projected financial data from the Wineries and did not study local wedding or event venues. By relying exclusively on RMA data, contrary to RMA's own direction, his methodology violates accepted standards and renders his opinions inadmissible.

### D. Plaintiffs Failed To Offer Any Objective Facts Or Data Showing That They Could Profitably Engage In The Large Event Business.

In *Fredonia Farms, LLC v Enbridge Energy Partners, L.P.*, 1:12-cv-1005, 2014 WL 3573723 (W.D. Mich., July 18, 2014), the issue presented was the calculation for a claim for lost profits from a business that had never existed. The plaintiff's expert conducted extensive research assuming the business would obtain zoning changes, environmental compliance, financing, infrastructure completion, successful marketing, vineyard planting, quality win production, and profitable retail and restaurant operations. *Id*. at *5. Despite this comprehensive expert analysis, the court held the lost profits were too speculative.

The problem, as the *Fredonia* Court explained, is that Michigan allows lost profits for new businesses only if established with "reasonable certainty." *Id*. (citing *Fera v. Vill. Plaza, Inc.,* 396 Mich. 639, 644, 242 N.W.2d 372, 374 (1976). "Although Michigan courts have not explicitly listed the types of evidence that may be used to demonstrate lost profits for a <u>new business</u>, courts in other states have examined expert reports, market analyses, comparisons to similar businesses operating under similar market conditions, and economic and financial data." *Fredonia*, 2014 WL at *5 (internal citations omitted). A new business may recover lost profits "[w]here estimates of lost profits are based on objective facts or data and there are firm reasons to expect a business to yield a profit." *Id*. (internal citation

omitted). The Court held that damages for prospective businesses require proof of "legal permitted, market driven, financed, demanded, realistic business[es] supported by expert reports and market analyses." *Id*.

Plaintiffs made no such showing here. They failed to establish three threshold requirements: proper zoning, expert testimony on feasibility, and market demand evidence. The District Court's failure to identify these shortcomings in Plaintiffs' presentation is reversible error.

First, Plaintiffs did not and cannot establish they had proper zoning to host events during 2017-2021. Their properties remain zoned A-1 Agricultural. The District Court granted no injunctive relief or rezoning that would have authorized event hosting, either retroactively or prospectively. **RE 623**. The Court affirmatively ruled that allowance of such events was not compelled by Plaintiffs' constitutional claims. *Id*. Plaintiffs simply cannot establish they were properly zoned to host events during the damages period.

Second, Plaintiffs offered no expert testimony on feasibility, market demand, or facility suitability. Mr. Larson admitted he conducted no market or the feasibility analysis and had no expertise in business development, demand, marketing, or feasibility of event businesses. **RE 609, PageID ##25100-25106**. Neither Mr. Larson nor any winery owner contacted local wedding or event venues to inquire about demand, seasonality, winter closures, or similar issues. *Id*. at PageID #25104.

The Wineries and their retained expert lacked understanding of the facilities, equipment, financing, staffing, food and beverage requirements, or other necessities of operating a large event businesses.

Third, Plaintiffs provided no objective market evidence. The District Court relied on "usual business practices" to award millions in damages. **RE 623, PageID #31471**. But the Wineries had never engaged in large event hosting. The "usual business practices" for a business Plaintiffs never operated is illusory and the Court's reliance on it is error. The Court should have dismissed Plaintiffs' self-serving, speculative testimony but instead relied on it for the $49.2 million award.

Equally troubling is that Plaintiffs' "evidence" consisted of anecdotal testimony that they received "a lot" of emails about weddings and hosting multiple events per week year-round. ***See, e.g.*** **RE 603, PageID #23642, RE 604, PageID ##24010, 24016; RE 606, PageID ##24272, 24445, 24543.** Bonobo's owner candidly admitted that his estimates were "purely speculative." **RE 600, PageID #23103**.

Moreover, Plaintiffs asserted they would not close during weddings but would keep tasting rooms and patios open to the public while hosting weddings elsewhere on the property. ***See, e.g.*** **RE 602, PageID ##23417, 23419; RE 603, PageID #23815; RE 608, PageID ##24986-24988**. There were no coherent answers regarding bride expectations, parking, or feasibility, and defense counsel was cut off

when probing whether facilities could realistically host both the public and wedding simultaneously. **RE 608, PageID ##24993-24995**. The District Court nonetheless accepted this non-expert testimony and awarded over $42 million in damages based on shared-use event hosting.

The District Court also ignored individual zoning constraints. For example, Bonobo was not granted GAUs in its SUP. **RE 457-6, PageID #16195**. Bonobo received citations for hosting unauthorized events and pled responsible to those violations. **RE 457-8**. It then submitted an amendment application for GAUs, which it subsequently withdrew. A plaintiff cannot recover damages for activities it never had permission to conduct.

Although the District Court criticized the Township for not designating an economic expert, Plaintiffs presented no expert testimony on feasibility, market demand, or facility suitability. Rather than denying recovery, the Court accepted Plaintiffs' business aspirations as fact and awarded tens of millions of dollars in damages for ventures that never existed.

Under *Fredonia*, far more was required. Plaintiffs were not experts, retained no feasibility, market demand, and/or suitability experts, and failed to establish legally permitted, market-driven, financed, and realistic businesses supported by expert analysis. The District Court should have minimally required that proof to satisfy Plaintiffs' burden on damages but did not do so. Plaintiffs are not entitled to

lost-profit damages for speculative businesses they never operated and failed to establish with reasonable certainty.

### E. Gross Profit Is Not The Proper Measure Of Damages And Plaintiffs Failed To Offer Any Evidence Of Net Profit.

In finding gross profits appropriate, the District Court relied wholly upon *Contract Design Group, Inc. v. Wayne State University*, 635 F. App'x 222 (6th Cir. 2015). This case was cited by Plaintiffs, and the error that came from the District Court's reliance was invited by them. *Contract Design* does not support the District Court's massive damages decision. To the contrary, *Contract Design* reaffirmed that "use of gross rather than net profits has also been found to be an inappropriate way of calculating lost profits." *Id.* at 235. *Contract Design* further characterized the expert's opinion there as "hardly a model of precision" an apt description of Mr. Larson's work here. Critically, this Court also noted it was utilizing an abuse of discretion standard, unlike this case, and that damages were awarded for emotional distress rather than lost profits, rendering any discussion of lost-profit methodology largely dicta.

The District Court conducted no comparable methodological scrutiny, applied an improper gross-profit measure untethered to any actual financial data, and did so under circumstances requiring *de novo* review. Every other published Michigan and Sixth Circuit decision holds that gross profit is not a proper measure of damages.

Reliance on the uniquely situated *Contract Design* decision to impose a damages award exceeding $49 million against a municipality was error.

For more than forty years, Michigan courts have held that damages for lost profits must be based on net profits. *See, e.g.*, *Lawton v. Gorman Furniture Corp.*, 90 Mich. App. 258, 267; 282 N.W.2d 797 (1979); *Getman v. Matthews*, 125 Mich. App. 245, 250; 125 N.W.2d 671 (1983). Otherwise, plaintiffs would recover a greater sum than they would have earned had the breach not occurred.

This Court has also held that damages for lost profits must be based on net profits. *DXS, Inc. v. Siemens Medical Systems, Inc.*, 100 F.3d 462, 473 (6th Cir. 1996). Similarly, in *Bessemer Lake Erie R.R. Co. v. Seaway Marine Transport*, 596 F.3d 357 (6th Cir. 2010), this Court affirmed summary judgment on a lost-profits claim where the plaintiff failed to account for cost savings during an operational shutdown. The Court explained that lost profits are calculated by deducting costs saved from lost gross revenue and rejected the argument that no costs were avoided, observing it "suspends reality" to suggest no costs were avoided when operations ceased. *Id.* at 369.

The same logic applies here because it suspends logic to suggest that Plaintiffs avoided no costs by not hosting events. The District Court concluded that "there would be no change in overhead costs" or that such costs were "baked into" event pricing. **RE 623, PageID ##31476-31477**. This conclusion ignores numerous event-

specific costs Plaintiffs necessarily avoided, including labor, setup and teardown, rentals, food, permits, marketing, utilities, and insurance riders.

The Court's reliance on costs being "baked into the event pricing" misunderstands lost-profit damages. The relevant inquiry is whether expenses would have been incurred but for the lost opportunity. Event-specific costs are variable and avoided when events do not occur. Treating them as non-existent because they were contemplated in pricing permits recovery of gross profits and results in a windfall. *See*, *e.g.*, *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 554 (6th Cir. 1995).

Even accepting the District Court's reliance on *Contract Design*, such a claim would require expert testimony and financial evidence establishing legal permissibility and the absence of operational expenses. None was provided. As discussed in Sections IV.C and IV.D, neither Mr. Larson nor the winery owners were identified or qualified as experts in event hosting, market demand, or feasibility.

Only on redirect did Mr. Larson attempt—without expertise—to suggest that the Wineries could host events with no additional costs. He admitted he was not an expert in this area. When defense counsel sought to call winery owners to establish the numerous unavoidable costs of hosting large events, that request was denied. **RE 609, PageID ##25190-25191**. This denial was not initially concerning because the District Court had precluded Schedule 7 event hosting damages from evidence.

However, the final Opinion granted over $49 million in even hosting damages, making this error glaring.

More fundamentally, Mr. Larson never calculated net profits. Mr. Larson did not investigate, evaluate, or have an opinion regarding net profits in this case:

> Q: All right. So if the RMA provides an operating expense and a net profit number, you did not look at that, correct?
> A: I looked at it, but it's not part of my calculation.
> Q: You didn't use it?
> A: That's correct.
> Q: You have no opinion whatsoever in this case as to what lost net profits are, correct?
> A: Lost net income, I do not.

**Id. at PageID ##25148-25149**.

Mr. Larson testified that the RMA Guidelines contain a percentage for gross profit and net profit. Mr. Larson, however, ignored the net profit percentage and provided no expert opinion on net profit, choosing instead to base his opinion on the significantly higher gross profit percentage. **Id. at PageID #25097**. The difference is substantial. Mr. Larson testified that if he had used the RMA net profit figures, the net profit would have been $1/13^{th}$ the gross profit calculation:

> Q: So if we applied that number, the five percent instead of the gross profit number, the number you come up with would be 1/13th of what we show there, correct?
> A: That's correct.
> Q: But you didn't do that in this case and that's not part of your report, correct?
> A: That's correct.

*Id.* **at PageID #25162**. Having failed to offer any evidence regarding alleged lost *net* profit, there is no evidence in the record to support Plaintiffs' claims for lost profits.

Finally, the District Court recognized the tenuous nature of awarding gross profits instead of net when it refused to award Plaintiffs damages for increased grape costs or merchandise sales: "For the instant case, net profits are a more accurate way to calculate the Wineries' damages based on Schedule 1 . . . and Schedule 5". **RE 623, PageID #31473**. The Court noted "Mr. Larson's calculations are not a proper fit or reasonable under Schedules 1 and 5" and that "[t]hese calculations should have been based upon net profits." *Id.* Yet pages later, the District Court adopted gross profits for event hosting damages despite these damages presenting identical issues. *Id.* **at PageID ##31474-31478**.

The District Court's damages award is legally infirm, having been injected with error given its reliance on *Contract Design* at the invitation of Plaintiffs. This error warrants reversal of the $49.2 million damages award.

**V.      THE DISTRICT COURT ERRED BY GRANTING PLAINTIFFS SUMMARY JUDGMENT ON THE TOWNSHIP'S STATUTE OF LIMITATIONS AFFIRMATIVE DEFENSE AND PRECLUDING THE TOWNSHIP FROM PRESENTING THE ISSUE AT TRIAL.**

The District Court granted Plaintiffs' motion for summary judgment on the Township's statute of limitations affirmative defense, which barred the Township from presenting the defense at trial. **RE 439; RE 35, PageID #1950**. **RE 528,**

**PageID ##21254-21255**. The grant of summary judgment is reviewed *de novo*. *Avient Corp.*, 145 F.4th at 665.

Michigan's three-year statute of limitations applies to claims brought under Section 1983. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853 (6th Cir. 2020). Plaintiffs' claims in Counts I-VII are subject to a three-year statute of limitations.

A Section 1983 claim accrues when the plaintiff has a "complete and present cause of action". *Wallace v. Kato*, 549 U.S. 384, 388 (2007). In this circuit, accrual occurs when the plaintiff "knows or has reason to know" of the act giving rise to the injury. *Cooey v. Strickland*, 479 F.3d 412, 416 (6th Cir. 2007). The inquiry focuses on when a reasonably prudent person would have been alerted to protect their rights. *Edison v. State of Tenn. Dept. of Children's Servs.* 510 F.3d 361, 635 (6th Cir. 2007) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)).

In the zoning context, claims accrue when the government takes a discrete land-use action alleged to have caused harm. *See A to Z, Inc. v. City of Cleveland*, 281 Fed. Appx. 458 (6th Cir. 2008). Plaintiffs' claims arise from discrete readily ascertainable actions – SUPs and land-use permit approvals.

Each Plaintiff knew or should have known of the actions causing the harms that gave rise to their causes of action once the Township approved their operative zoning permit. Each approval occurred more than three-year pre-suit except

Hawthorne (SUP issued in 2020) and Bowers Harbor (Winery-Chateau SUP issued in 2019):

- Chateau Grand Traverse – SUP 24 issued July 1990.
- Chateau Chantal – SUP 21 issued January 1990.
- Peninsula Cellars – SUP 62 issued November 1998.
- Tabone – SUP 73 was transferred to Tabone in February 2004.
- Black Star –Farm Processing Permit issued September 2007.
- Two Lads – Farm Processing Permit issued October 2007.
- Brys – SUP 115 issued February 2011.
- Bonobo – SUP 118 issued May 2013.
- Villa Mari – SUP 126 issued March 2016.

The District Court's reliance on the continuing violations doctrine to defeat the Township's statute of limitations defense was misplaced. **RE 528, PageID #21254; RE 559, PageID #21915.** Federal courts recognize that, when a pattern or practice of behavior results in a continuing violation of a plaintiff's rights, the statute of limitations is deemed to begin running only with the conclusion of the pattern of harmful conduct such as when the last wrongful event occurs. *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). A continuing violation "requires continued action and not simply continuing harm or 'passive inaction.'" *Moss v. Columbus Bd. of Educ.*, 98 Fed. Appx. 393, 396 (6th Cir. 2004). The doctrine is disfavored outside of the context of Title VII claims, *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995), and this Court "rarely extends it to § 1983 actions." *Katz v. Vill. of Beverly Hills*, 677 Fed. Appx. 232, 236 (6th Cir.

2017) (quoting *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003)); *Basista Holdings, LLC v. Ellsworth Twp.*, 710 Fed. Appx. 688, 693 (6th Cir. 2017).

The Court applies a three-part test: (1) the wrongful conduct must continue after the precipitating event that began the pattern; (2) injury to the plaintiff must continue to accrue after the event; and (3) further injury would have been avoided if the defendant ceased the wrongful conduct. *Edison v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (quoting *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999).

None of the elements are met. Plaintiffs' claims arise from discrete acts – permit approval. These are not ongoing violations. Plaintiffs allege, at most, continuing effects of past actions, which is insufficient. *See Tolbert*, 172 F.3d at 940. Discrete, easily identifiable acts are antithetical to a continuing-violations theory. *See Goldsmith v. Sharrett*, 614 Fed. Appx. 824, 828 (6th Cir. 2015). Even is the Township repealed the challenged provisions, Plaintiffs' alleged injuries would persist because their properties remain in the A-1 District, which does not allow for the commercial uses they seek. *See Midwest Media Prop., L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456, 461-462 (6th Cir. 2007) (addressing redressability).

The District Court erred by granting summary judgment to Plaintiffs on the statute of limitations defense and barring the Township from presenting the issue at trial. The District Court's decision should be reversed.

## VI. THE DISTRICT COURT ERRANTLY FAILED TO CONSIDER THE TOWNSHIP'S LACHES DEFENSE AFTER TRIAL.

The District Court erred when it failed to apply the Township's laches affirmative defense at trial despite the Township clearly identifying the defense in its trial brief and Plaintiffs' failure to rebut the defense at trial. **RE 581, PageID ##22683-22685**. The Township established Plaintiffs lacked reasonable diligence in asserting their claims and this lack of diligence prejudiced the Township. At trial, Plaintiffs did not rebut the presumption that their delay was prejudicial and unreasonable. Nevertheless, the District Court did not just ignore the laches defense in its Bench Opinion, but claimed that the Township "waived" the defense because "[n]either the Township, nor PTP presented any witnesses related to laches". **RE 623, PageID #31481**. But the Township had already met its burden and Plaintiffs did not present any evidence to rebut. The District Court's error is reviewed *de novo. See Metropolitan Gov't of Nashville*, 86 F.4th at 714.

With the exception of Hawthorne and Bowers Harbor, Plaintiffs sat on their claims for years (if not decades), to the significant prejudice of the Township and its residents. As this Court has recognized, "[l]aches is the negligent and unintentional failure to protect one's rights." *Natron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408 (6th Cir. 2002) (cleaned up). "A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Bridgeport Music, Inc. v. Juston Combs Pub.*, 507 F.3d 470,

493 (6th Cir. 2007) (internal citations omitted). The Court presumes that a plaintiff's delay in asserting its rights is reasonable as long as an analogous statute of limitations has not elapsed, correspondingly, however, "a delay beyond the three-year statutory period is presumptively prejudicial and unreasonable." *Natron*, 305 F.3d at 408. The relevant statute of limitations for this Section 1983 claim is three years. As discussed *supra*, Plaintiffs delayed well beyond the expiration of the statute of limitations to file suit.

As the Township argued in its pre-trial brief, there was a presumption of an unreasonable delay and prejudice to the Township. The proofs at trial did not undermine this presumption but rather bolstered it. Once the Township demonstrated an unreasonable and prejudicial delay, the burden shifted to Plaintiffs to rebut the presumption of laches. Plaintiffs did not do so.

"In order to overcome the presumption of laches, plaintiff must: (1) rebut the presumption of prejudice; (2) establish that there was a good excuse for its delay; or (3) show that the defendant engaged in 'particularly egregious conduct which would change the equities significantly in plaintiff's favor.'" *Natron*, 305 F.3d at 409 (internal citation omitted). The Court noted "*any* prejudice is sufficient, including an increase in potential damages or a loss of evidence." *Id.* (internal citations omitted). Laches would operate to bar damages that occurred before the filing date of the lawsuit. *Id.* at 412 (internal citation omitted). That Plaintiffs advance constitutional

claims does not alter this analysis. *See Thatcher Enterprises v. Cache Cnty Corp.*, 902 F.2d 1472, 1475-76 (10th Cir. 1990); *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 9 (2008) ("[a] constitutional claim can become time-barred just as any other claim can") (internal quotation and citation omitted).

The unreasonable delay is exemplified by Bonobo's conduct. Bonobo pled responsible to citations for unauthorized GAUs in 2016 and submitted (then withdrew) an amendment application in 2019 – yet waited until the collective filing of this lawsuit to assert constitutional violations. **RE 457-8; RE 463-4**. Bonobo's delay prejudiced the Township by permitting damages to accumulate that would have been avoided had Bonobo either complied with its SUP or timely challenged the ordinance.

The same analysis applies to Chateau Chantal, which negotiated and consented to a judgment defining a similar standard in 1998, yet waited over two decades to claim those same standards were unconstitutionally vague. **RE 463-20**. It negotiated standards through counsel, obtained judicial approval via Consent Judgment, and watched those standards become codified in the 2004 GAU amendment. For over two decades, Chateau Chantal operated under these negotiated terms without complaint. Only when joined with other wineries in collective litigation did Chateau Chantal suddenly discover constitutional infirmity in provisions it helped draft. This delay, following active participation in the regulatory

process, exemplifies the inequitable conduct that laches exists to address. The Township relied on the 1998 settlement and subsequent compliance to its significant detriment – damages that would not have accrued but for Chateau Chantal's decades of silent acquiescence.

Plaintiffs made no effort to rebut the presumption of laches at trial. There can be no question the Township suffered increased damages as a result of Plaintiffs' delays. The District Court's blindness to the laches defense resulted in the damages award reaching back to 2017, when laches should have been applied to bar damages for Plaintiffs' claims (with the exception of Hawthorne and Bowers Harbor) from before the date of filing of the lawsuit.

The Court should reverse the District Court's finding that the Township "waived" laches, find that laches applies, and reverse the District Court's award of damages from before the filing of the complaint.

## VII. ON SUMMARY JUDGMENT AND FOLLOWING TRIAL, THE DISTRICT COURT INCORRECTLY CONCLUDED THAT THE PTZO VIOLATED PLAINTIFFS' FIRST AMENDMENT RIGHTS UNDER THREE DIFFERENT THEORIES.

Pursuant to Fed. R. App. P. 28(i), the Township adopts by reference Sections IX(A)(1)-(3) of PTP's First Brief on Appeal, specifically that: (1) the District Court erred in declaring sections of the PTZO restrain commercial speech; (2) that the PTZO constituted a prior restraint; and (3) that the PTZO compelled speech. The arguments adopted from PTP's First Brief on Appeal are readily transferable from

PTP's case to the Township's case. *See United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

The Township writes separately to identify that in conducting its *Central Hudson* analysis, among the many other errors identified by PTP, the District Court errantly discounted the Township's comprehensive legislative history in this zoning case. Post-trial the District Court labeled decades of Township minutes and legislative history as "hearsay". **RE 623, PageID #31461**. That is belied by the trial record. Plaintiffs objected to minutes as hearsay, to which the Township responded that they were public records and, to the extent the documents included statements from the public, those statements were not offered to prove the truth of the matter asserted. **RE 601, PageID ##23147-23151**. The District Court overruled the objection and admitted the exhibit. ***Id.* at PageID #23151**. The District Court later reiterated: "For the reasons already stated on the record, I think the Township's minutes are admissible, accordingly, they are received over objection." **RE 609, PageID ##25208-25209**. The Bench Opinion confirms the "documents into the records over Plaintiffs' continuing hearsay objection." **RE 623, PageID #31416**. The District Court's rejection of the Township's legislative history as "hearsay" was errant.

The District Court's First Amendment findings were erroneous and should be reversed and judgment should be entered in favor of the Township.

## VIII. THE DISTRICT COURT ERRED BY GRANTING SUMMARY JUDGMENT TO PLAINTIFFS ON THEIR DORMANT COMMERCE CLAUSE THEORY.

Pursuant to Fed. R. App. P. 28(i), the Township adopts by reference Section IX(C) of PTP's First Brief on Appeal. The argument adopted from PTP's First Brief on Appeal is readily transferable from PTP's case to the Township's case. *See Elder*, 90 F.3d at 1118.

There is no basis to conclude that challenged provisions are invalid under the dormant Commerce Clause. The District Court's grant of summary judgment on this claim should be reversed and judgment should be entered in favor of the Township.

## IX. THE DISTRICT COURT ERRED IN CONCLUDING THAT TWO SECTIONS OF THE PTZO ARE PREEMPTED BY THE MICHIGAN LIQUOR CONTROL CODE.

Pursuant to Fed. R. App. P. 28(i), the Township adopts by reference Section IX(D) of PTP's First Brief on Appeal. The argument adopted from PTP's First Brief on Appeal is readily transferable from PTP's case to the Township's case. *See Elder*, 90 F.3d at 1118.

The District Court's conclusion regarding Sections 8.7.3(10)(u)(5)(g) and (i) should be reversed and summary judgment entered for the Township.

## <u>CONCLUSION AND RELIEF REQUESTED</u>

This case went off the rails at vagueness and never recovered. The District Court invalidated narrow, economic land-use provisions that granted additional,

permissive uses without engaging the text of the ordinance, without applying the correct level of scrutiny, and based on anecdotal confusion by former Township representatives. That legal error became dispositive. After refusing to revisit this ruling after PTP intervened, the District Court then attributed *all* of Plaintiffs' alleged economic losses to that supposed defect – despite undisputed evidence that Plaintiffs' agricultural zoning was an independent barrier to the commercial uses they seek. The Constitution simply does not permit a $49.2 million damages award untethered from causation and the law. The law also does not permit an award of compensatory damages for gross profits based on speculative projections for businesses Plaintiffs never operated and could not lawfully operate independent of the very permissive zoning provisions they challenged. These errors alone require reversal and entry of judgment in favor of the Township.

But the errors do not stop there. Plaintiffs' as-applied and regulatory takings claims were not ripe for lack of finality, were barred in substantial part by the statute of limitations, and unsupported by proof of causation. The District Court further erred in its First Amendment analysis, its conclusion on Dormant Commerce Clause, and in its preemption rulings.

Wherefore, the Township requests that this Court vacate the District Court's judgment, reverse its liability findings on the constitutional and state-law claims, and direct entry of judgment in the Township's favor.

McGRAW MORRIS MASUD
Attorney for Defendant-Appellant/Cross-Appellee

Dated: February 13, 2026     BY:   /s/     *Bogomir Rajsic, III*
                                    Bogomir Rajsic, III
                                    Thomas J. McGraw
                                    Tracey R. DeVries
                                    44 Cesar E. Chavez Avenue SW, Ste 200
                                    Grand Rapids, MI  49503
                                    (616) 288-3703
                                    brajsic@mcgrawmorris.com

## CERTIFICATE OF COMPLIANCE FRAP 32(g)

The undersigned certifies that "Corrected" First Appeal Brief consists of 17,971 words in compliance with the Court's Order ECF #29 and was created using Microsoft Word 2016.

McGRAW MORRIS MASUD
Attorney for Defendant-Appellant/Cross-Appellee

Dated: February 13, 2026     BY:   /s/     *Bogomir Rajsic, III*
                                    Bogomir Rajsic, III (P79191)

## CERTIFICATE OF SERVICE

I certify that on February 13, 2026, the foregoing document was served on all parties or their counsel of record through the CM/ECF system which will serve all parties who have appeared or their attorneys of record.

McGRAW MORRIS MASUD
Attorney for Defendant-Appellant/Cross-Appellee

Dated: February 13, 2026     BY:   /s/     *Bogomir Rajsic, III*
                                    Bogomir Rajsic, III (P79191)

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

| RE | PageID Range | Description of Document |
|---|---|---|
| 1 | #1-434 | Complaint |
| 2 | #435-437 | Plaintiff Motion for Preliminary Injunction |
| 3 | #438-884 | BIS of Plaintiff Motion for Preliminary Injunction |
| 22 | #904-932 | Township Motion for Partial Dismissal |
| 24 | #936-1000 | Township Response to Plaintiff Motion for Preliminary Injunction |
| 29 | #1086-1571 | First Amended Complaint |
| 30 | #1572-1613 | Plaintiffs' Response to Township Motion for Partial Dismissal |
| 32-6 | ##1756-1771 | SUP No. 118 for Bonobo Winery |
| 34 | #1864-1877 | Order Denying Motion for Preliminary Injunction |
| 35 | ##1878-1954 | Township Answer to Plaintiff First Amended Complaint |
| 40 | ##1965-1966 | PTP Motion to Intervene |
| 41 | ##1967-2120 | BIS of PTP Motion to Intervene |
| 46 | ##2132-2149 | Plaintiffs Response to PTP's Motion to Intervene |
| 53 | ##2270-2271 | Plaintiffs' MPSJ Preemption |
| 54 | #2272-2551 | BIS Plaintiffs' MPSJ Preemption |
| 56 | ##2553-2627 | PTP Motion for Leave to Supplement Motion to Intervene |
| 62 | ##2737-2738 | Township Response to Plaintiffs' MPSJ Preemption and Cross MSJ Preemption |
| 63 | ##2739-3078 | BIS of Township Response to Plaintiffs' MPSJ Preemption and Cross MSJ Preemption |
| 63-6 | ##2825-2838 | Bowers Harbor SUP No. 32 |
| 63-6 | ##2838-2855 | Amendment to Bowers Harbor SUP No. 32 |
| 63-10 | ##2994-3020 | Mari SUP No. 126 |

| 70 | #3140-3179 | Plaintiff Reply BIS of MPSJ and in Opp. to Township Cross-MSJ |
| 108 | #4167-4175 | Order Denying PTP Motion to Intervene and Motion to Supplement |
| 121 | #4343 | PTP Notice of Appeal of ECF 108 |
| 135 | #4710-4711 | Plaintiffs' MPSJ Constitutional Claims |
| 136 | #4712-4947 | BIS Plaintiff MPSJ Constitutional Claims |
| 142 | #4961-5342 | Township MSJ Constitutional Claims |
| 142-2 | ##5009-5092 | Township Master Plan (2011) |
| 143 | #5343-5625 | Township Response in Opposition to Plaintiffs' MPSJ Constitutional Claims |
| 145 | #5627-5708 | Reply BIS of Plaintiffs' MPSJ Constitutional Claims |
| 146 | #5709-5832 | Plaintiffs' Response to Township MSJ Constitutional Claims |
| 147 | #5833-5846 | Township Reply BIS of its MSJ Constitutional Claims |
| 147 | #5833-5846 | Township Reply BIS of MSJ Constitutional Claims |
| 162 | #5981-6030 | Opinion on MSJs |
| 164 | #6032-6085 | Township Notice of Appeal of ECF 162 |
| 169 | #6218-6339 | Township Motion for Stay of Injunction |
| 171 | #6341-6459 | Plaintiffs Response to Motion for Stay of Injunction |
| 173 | #6555-6557 | Township Motion to Alter/Amend Judgment |
| 174 | #6558-6605 | Township BIS of Motion to Alter/Amend Judgment |
| 187 | #7036-7220 | Plaintiffs' Corrected Response to Motion to Alter/Amend Judgment |
| 206 | #7795 | Preliminary Injunction |
| 207 | #7796-7801 | Order Denying Motion to Stay Injunction |
| 211 | #7805-7817 | Order Denying Motion to Alter/Amend Judgment |
| 215 | #8177-8193 | USCA Opinion re PTP Appeal |
| 219 | #8378-8381 | Plaintiffs' Motion to Strike Supplemental Exhibit to Sealed Motion to Strike |
| 220 | #8382-8411 | Plaintiffs BIS of Motion to Strike Supplemental Exhibit to Sealed Motion to Strike |
| 222 | #8413 | Order Granting Plaintiffs' Motion to Strike |
| 232 | #8469-8474 | Order Denying Township Motion to Strike Plaintiff's Supplemental Expert Witness Report |
| 236 | #8538 | Order Adjourning Trial |
| 238 | #8646-8664 | Township's Objection to Order Granting Plaintiffs' Motion to Strike Supplemental Exhibit |

| 240 | #8714-8721 | Township's Objection to Order Denying Motion to Strike Expert CPA Eric Larson |
|------|------------|------------------------------------------------------------------------------|
| 242 | #8734-8794 | Township's Notice of Appeal from ECF 206 |
| 243 | #8795-8797 | USCA Mandate re PTP Appeal |
| 245 | #8801-8807 | Township Objection to Order Denying Motion to Strike Plaintiffs' Supplemental Expert Report |
| 248 | #8812-8892 | PTP Answer to Plaintiff's First Amended Complaint |
| 249 | #8893-8913 | PTP Motion for Relief from CMO and to Stay Trial |
| 250 | #8914-8973 | PTP Motion to Dismiss Plaintiff's State Law Claims |
| 251 | #8974-8982 | USCA Order for Township Appeal of ECF 162 |
| 252 | #8983 | USCA judgment vacating injunction |
| 253 | #8984-9010 | Plaintiffs' Response to Township Objection to Order Granting Plaintiff's Motion to Strike Supplemental Exhibit |
| 259 | #9134-9184 | Plaintiff's Response to Township Objection to Order Denying Motion to Strike Expert Witness Larson |
| 263 | #9379-9407 | Plaintiffs' Response to Township's Objection to Order Denying Motion to Strike Plaintiffs' Supplemental Expert Report |
| 263 | #9431-9559 | Plaintiffs' Response to PTP Motion to Dismiss |
| 264 | #9560-9561 | USCA Mandate |
| 272 | #9910-9938 | Township's BIS Response to PTP Motion to Dismiss |
| 273 | #9939-9971 | PTP Reply to Plaintiffs' Response to PTP Motion to Dismiss |
| 284 | #10186-10202 | Order Resolving Objections to Orders |
| 285 | #10203-10212 | PTP Motion to Set Aside SJ Order and BIS |
| 288 | #10217-10243 | Township Motion for Relief from Order |
| 291 | #10251-10336 | PTP First Amended Answer to Plaintiff's First Amended Complaint |
| 292 | #10337-10379 | Township Motion to Amend CMO/Leave to Disclose Expert |
| 294 | #10384-10481 | Plaintiff's Response to PTP Motion to Set Aside SJ Order |
| 295 | | Plaintiffs' Response to Township's Motion to Amend CMO Disclose Expert Witness |
| 300 | #10587-10605 | Plaintiffs' Response to Township Motion for Relief from Order |

| 301 | ##10685-10705 | Opinion and Order on PTP Motion to Amend CMO, Motion to Dismiss, and Motion to Set aside Order |
|---|---|---|
| 303 | ##10835-10843 | Opinion and Order resolving Townships Motion for Relief from Order and Motion to Amend CMO |
| 304 | ##10844-10863 | PTP brief regarding additional interests |
| 310 | ##11434-11453 | Plaintiffs' response to PTP's brief regarding additional interest |
| 319 | ##11878-11890 | Opinion and Order on PTP's interests |
| 333 | ##12013-12014 | Plaintiffs MPSJ Preemption |
| 334 | ##12015-12055 | Plaintiffs BIS of MPSJ Preemption |
| 353 | ##12897-12936 | Township Response to Plaintiffs' MPSJ Preemption |
| 355 | ##12938-12941 | PTP Response to Plaintiff MPSJ Preemption and Cross-Motion on Preemption |
| 356 | ##12942-12985 | PTP BIS of Response to Plaintiff MPSJ Preemption and Cross-Motion Preemption |
| 365 | ##13417-13435 | Plaintiff Reply to Township Response to Plaintiff MPSJ Preemption |
| 366 | ##13480-13500 | Plaintiff Reply to PTP response to Plaintiff MPSJ Preemption and Cross-Motion Preemption |
| 439 | ##15540-15541 | Plaintiffs Motion Township Affirmative Defenses |
| 440 | ##15542-15565 | Plaintiffs BIS of Motion Township Affirmative Defenses |
| 441 | ##15617-15618 | Plaintiffs Motion PTP Affirmative Defenses |
| 442 | ##15619-15661 | Plaintiffs BIS Motion PTP Affirmative Defenses |
| 443 | ##15778-15779 | Township MSJ Preemption |
| 444 | ##15780-15820 | Township BIS of MSJ Preemption |
| 444-2 | ##15907-15930 | Amendment 201 to PTZO |

| 457 | ##16033-16074 | PTP Response to Plaintiff Motion PTP Affirmative Defenses |
|------|---------------|----------------------------------------------------------|
| 457-10 | ##16203-16217 | Conservation Easement related to Black Star |
| 457-11 | ##16218-16232 | Conservation Easement related to Bonobo (I) |
| 457-12 | ##16233-16245 | Conservation Easement related to Bonobo (II) |
| 458 | ##16314-16316 | Township Motion to Dismiss FPF Subject Matter Jurisdiction |
| 459 | ##16317-16348 | Township BIS Motion to Dismiss FPF Subject Matter Jurisdiction |
| 459-1 | #16354 | Deposition of Jennifer Cram |
| 459-2 | #16361 | Two Lads Preliminary FPF Permit |
| 459-3 | #16363 | Two Lads Final FPF Permit |
| 459-4 | #16367-16368 | Deposition of Christopher Baldyga |
| 459-6 | #16373 | Black Star Preliminary FPF Permit |
| 459-7 | #16375 | Black Star Final FPF Permit |
| 459-8 | #16377-16381 | Black Star 2007 Variance Request Documentation |
| 459-9 | #16386 | Deposition of Lee Lutes |
| 459-10 | #16388-16393 | ZBA Minutes, August 9, 2007 |
| 459-12 | #16397-16407 | Black Star 2011 Variance Request |
| 459-13 | #16409 | Email from Lee Lutes to Peninsula Township |
| 459-14 | #16411-16416 | Black Start 2018 Variance Request |
| 459-15 | #16418 | 6/12/18 Letter from C. Deeren to R. Mampe |
| 459-17 | ##16425-16433 | SUP No. 73 related to Tabone |
| 459-18 | ##16435-16448 | Tabone Land Use Permit Application |
| 459-19 | ##16450-16451 | Email to Mario Tabone |
| 459-20 | #16453 | Email from Mario Tabone |
| 462 | ##16489-16491 | Township Motion to Dismiss WC Subject Matter Jurisdiction |

| | | |
|---|---|---|
| 463 | ##16492-16527 | Township BIS Motion to Dismiss WC Subject Matter Jurisdiction |
| 463-1 | ##16529-16544 | Deposition Testimony of Jennifer Cram |
| 463-2 | ##16546-16555 | Bonobo SUP Amendment Application |
| 463-3 | ##16559-16560 | Deposition of Todd Oosterhouse |
| 463-4 | ##16562-16566 | Emails from Bonobo to Township |
| 463-5 | ##16568-16575 | Amendment to SUP No. 32 for Bowers Harbor |
| 463-6 | ##16577-16584 | Deposition of Spencer Stegenga |
| 463-8 | #16588 | Linda Stegenga e-mail to Township |
| 463-9 | ##16590-16600 | Brys SUP No. 115 |
| 463-10 | ##16602-16613 | First Amendment to SUP No. 115 |
| 463-11 | ##16615-16629 | Second Amendment to SUP No. 115 |
| 463-12 | ##16631-16646 | Third Amendment to SUP No. 115 |
| 463-13 | ##16648-16651 | Deposition of Patrick Brys |
| 463-14 | ##16653-16667 | Fourth Amendment to SUP No. 115 |
| 463-15 | #16669 | ZBA Decision |
| 463-16 | ##16671-16677 | Chateau Chantal SUP No. 21 |
| 463-17 | #16679 | Chateau Chantal SUP No. 95 |
| 463-18 | ##16681-16686 | Chateau Chantal SUP No. 114 |
| 463-19 | ##16688-16716 | First Amendment to SUP No. 114 |
| 463-20 | ##16718-16720 | Chateau Chantal Consent Judgment |
| 463-21 | ##16722-16725 | Deposition of Marie Chantal-Dalese |

| | | |
|---|---|---|
| 463-22 | ##16727-16736 | Chateau Grand Traverse SUP No. 59 |
| 463-23 | ##16738-16745 | Chateau Grand Traverse SUP No. 66 |
| 463-24 | ##16747-16749 | First Amendment to SUP No. 66 |
| 463-25 | #16751 | Hawthorne Vineyards Final Farm Processing Permit |
| 463-26 | ##16753-16763 | Hawthorne SUP No. 135 |
| 463-27 | ##16765-16774 | Peninsula Cellars SUP No. 62 |
| 463-28 | ##16776-16780 | Deposition of John Kroupa |
| 463-29 | ##16782-16786 | 10/13/20 Township Board Meeting Minutes |
| 463-30 | #16788 | 2/9/21 Letter from Township to John Kroupa |
| 463-31 | ##16790-16796 | LUP Documentation |
| 466 | ##16830-16867 | Township Response to Plaintiffs' MSJ Township Affirmative Defenses |
| 468 | ##16939-16940 | Plaintiffs MPSJ Constitutional Claims |
| 469 | ##16941-16983 | Plaintiffs BIS MPSJ Constitutional Claims |
| 473 | ##17980-18020 | Plaintiffs' Response to Township MSJ Preemption |
| 475 | ##18187-18206 | Plaintiffs' Reply in Support of Plaintiffs' MPSJ on PTP Affirmative Defenses |
| 476 | ##18325-18344 | Plaintiffs' Reply in Support of Plaintiffs' MPSJ on Township Affirmative Defenses |
| 478 | ##18400-18417 | Township Reply in support of Township MSJ Preemption |
| 485 | ##18506-18544 | Township Response to Plaintiffs' MSJ Constitutional Claims |
| 487 | ##18731-18766 | Plaintiffs' combined Response to Townships Motions to Dismiss Subject Matter Jurisdiction |
| 488 | ##18908-18955 | PTP Response to Plaintiffs' MSJ Constitutional Claims |

| 499 | ##19280-19299 | Township combined Reply to Plaintiffs' combined Response to Townships Motions to Dismiss Subject Matter Jurisdiction |
|------|---------------|---|
| 501 | ##19449-19468 | Plaintiffs' Reply to PTP's Response to Plaintiffs' MSJ Constitutional Claims |
| 502 | ##19567-19587 | Plaintiffs' Reply to Township Response to Plaintiffs' MSJ Constitutional Claims |
| 516 | ##19996-20000 | PTP MSJ Constitutional Claims |
| 517 | #20001-20073 | PTP BIS MSJ Constitutional Claims |
| 518 | ##20726-20740 | Order Denying Motions to Dismiss Subject Matter Jurisdiction |
| 519 | ##20741-20780 | Township Response in Support of PTP's MSJ Constitutional Claims |
| 521 | ##20890-20950 | Plaintiffs' Response to PTP MSJ Constitutional Claims |
| 525 | ##21120-21138 | Opinion and Order resolving Preemption Motion |
| 526 | ##21139-21163 | PTP Reply to Plaintiff's Response to PTP's MSJ Constitutional Claims |
| 528 | ##21250-21272 | Opinion and Order on MSJs Affirmative Defenses |
| 559 | ##21896-21922 | Opinion and Order on MSJ Constitutional Claims |
| 573 | ##22249-22429 | Final Pretrial Order |
| 580 | ##22582-22642 | Plaintiffs' Trial Brief and Proposed Findings of Fact and Conclusions of Law |
| 581 | ##22653-22707 | Defendants' Joint Trial Brief |
| 583 | ##22784-22843 | Defendants' Joint Proposed Findings of Fact and Conclusions of Law |
| 589 | #22911 | Minutes of Trial 4/29/24 |
| 590 | #22912 | Minutes of Trial 4/30/24 |
| 591 | #22913 | Minutes of Trial 5/01/24 |
| 592 | #22914 | Minutes of Trial 5/02/24 |
| 593 | #22915 | Minutes of Trial 5/06/24 |
| 594 | #22916 | Amended Minutes of Trial 5/07/24 |

| 595 | #22917 | Minutes of Trial 5/07/24 |
|---|---|---|
| 596 | #22918 | Minutes of Trial 5/08/24 |
| 597 | #22919 | Minutes of Trial 5/09/24 |
| 598 | #22920 | Minutes of Trial 5/10/24 |
| 599 | #22921 | Minutes of Trial 5/13/24 |
| 600 | #22922-23412 | Trial Transcript from 4/29/24 |
| 601 | ##23143-23368 | Trial Transcript from 4/30/24 |
| 602 | ##23369-23623 | Trial Transcript from 5/01/24 |
| 603 | ##23624-23855 | Trial Transcript from 5/02/24 |
| 604 | ##23856-24069 | Trial Transcript from 5/06/24 |
| 605 | ##24070-24263 | Trial Transcript from 5/07/24 |
| 606 | ##24264-24561 | Trial Transcript from 5/08/24 |
| 607 | ##24562-24841 | Trial Transcript from 5/09/24 |
| 608 | ##24842-25036 | Trial Transcript from 5/10/24 |
| 609 | ##25037 | Trial Transcript from 5/13/24 |
| 611-1 to 611-150 | ##25276-27735 | Plaintiffs' Admitted Trial Exhibits |
| 611-151 | ##27738-27826 | Plaintiffs' Designations from Deposition of C. Deeren |
| 611-152 | ##27827-27861 | Plaintiffs' Designations from Deposition of D. Sanger |
| 611-153 | ##27862-27920 | Plaintiffs' Designations from Deposition of G. Meihn |
| 611-154 | ##27921-28040 | Plaintiffs' Designations from Deposition of R. Manigold |
| 612 | ##28041-28046 | Order Granting Stipulation and Order regarding Trial Exhibits and Deposition Designations |
| 613 | #28047 | Plaintiffs' Admitted Supplemental Exhibit 163-1 |
| 615 | ##28049-28064 | Defendants' Deposition Designations and Discovery Document Designations and Admitted Trial Exhibits |

| 615-1 | ##28065-28142 | Defendant's Designations from Deposition of R. Manigold |
|---|---|---|
| 615-2 | ##28143-28181 | Defendant's Designations from Deposition of J. Wunsch |
| 615-3 | ##28182-28240 | Defendant's Designations from Deposition of G. Hayward |
| 615-4 | ##28241-28289 | Defendant's Designations from Deposition of G. Parsons |
| 615-5 | ##28290-28312 | Defendant's Designations from Deposition of C. Deeren |
| 615-6 | #28313-28511 | Defendant's Discovery Designations |
| 615-7 to 615-31 | ##28512-30796 | Defendant's Admitted Trial Exhibits |
| 615-7 | ##28512-28676 | Peninsula Township Zoning Ordinance |
| 615-7 | ##28677-28692 | Sections 6.7.2(19), 8.7.3(10), and 8.7.3(12) of the PTZO |
| 615-8 | ##28850-28851 | Defendant's Trial Exhibit Q |
| 615-26 | ##30443-30444 | Transfer of SUP No. 73 to Tabone |
| 615-27 | ##30485-30487 | Defendant's Trial Exhibit 10xA |
| 615-27 | ##30493-30495 | Defendant's Trial Exhibit 10xC |
| 617 | ##30879-30937 | Township Post-Trial Brief |
| 618 | ##30954-31113 | Plaintiffs' Post-Trial Brief |
| 619 | ##31199-31253 | PTP's Post-Trial Brief |
| 621 | #31305 | Minutes from Closing Arguments |
| 623 | ##31410-31484 | Post-Trial Bench Opinion |
| 624 | #31485 | Final Judgment |
| 628 | ##32034-32035 | Plaintiffs' Motion to Amend Judgment to Include Prejudgment Interest |

| 629 | ##32036-32043 | Plaintiffs' BIS Motion to Amend Judgment to Include Prejudgment Interest |
|------|---------------|---------------------------------------------------------------------|
| 633 | ##32059-32074 | Township's Response to Plaintiffs' Motion to Amend Judgment |
| 635 | ##32122-32135 | PTP's Response to Plaintiffs' Motion to Amend Judgment to Include Prejudgment Interest |
| 640 | #32186- | Township Notice of Appeal from ECF 624 |
| 641 | #32187-32188 | PTP Notice of Appeal from ECF 624 |
| 642 | ##32189-32192 | Plaintiffs' Reply in Support of Plaintiffs' Motion to Amend Judgment |
| 643 | ##32193-32196 | Order Denying Motion to Alter Judgment |
| 653 | #32597 | Plaintiffs Notice of Cross-Appeal from ECF 624 |