Nos. 25-1703/25-1705/25-1754

---

United States Court of Appeals for the Sixth Circuit

**WINERIES OF THE OLD MISSION PENINSULA ASSOCIATION, et al.,**

Plaintiffs - Appellees (25-1703/25-1705)/Cross-Appellants (25-1754)

v.

**TOWNSHIP OF PENINSULA, MI,**

Defendant - Appellant (25-1703)/Cross-Appellee (25-1754)

**PROTECT THE PENINSULA, INC.**

Intervenor - Appellant (25-1705)/Cross-Appellee (25-1754)

---

Appeal from the United Stated District Court
Western District of Michigan, Southern Division
Case No. 1:20-cv-1008, Honorable Paul L. Maloney

---

**APPELLEES/CROSS-APPELLANTS' OPPOSITION TO MOTION FOR LEAVE TO FILE BRIEF OF THE GOVERNMENTAL LAW SECTION OF THE STATE BAR OF MICHIGAN AS AMICUS CURIAE IN SUPPORT OF THE TOWNSHIP OF PENINSULA, MICHIGAN**

---

MILLER, CANFIELD, PADDOCK AND STONE, PLC
Joseph M. Infante (P68719)
Stephen M. Ragatzki (P81952)
Christopher Gartman (P86386)
99 Monroe Avenue, Suite 1200
Grand Rapids, MI 49503
Tel: (616) 776-6333
infante@millercanfield.com
Attorneys for Plaintiffs/Appellees/Cross-Appellants

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

    A.    GLS has not fulfilled its disclosure requirements ................................3

    B.    Constitutional claims are not "fallback" claims ...................................3

    C.    GLS's exhaustion argument is presumed on a disavowed standard ..................................................................................................4

    D.    GLS ignores the District Court's opinion finding that the Wineries had not agreed to forgo challenges to their permits ..............9

    E.    GLS's attacks on the District Court's "values" are not helpful .........10

    F.    GLS misrepresents the District Court's vagueness ruling .................11

CONCLUSION ....................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Catholic Healthcare International, Inc. v. Genoa Charter Township., Michigan*,
  82 F.4th 442 (6th Cir. 2023) ................................................................... 6, 7

*Fharmacy Recs. v. Nassar*,
  465 F. App'x 448 (6th Cir. 2012) ............................................................ 1, 3

*Glassroth v. Moore*,
  347 F.3d 916 (11th Cir. 2003) ..................................................................... 2

*Houdini Props., LLC v. Romulus*,
  743 N.W.2d 198 (Mich. 2008) ..................................................................... 8

*Jon Jon's Inc. v. City of Warren*,
  534 F. App'x 541 (6th Cir. 2013) ................................................................. 8

*Knick v. Twp. of Scott, Pennsylvania*,
  588 U.S. 180 (2019) ..................................................................................... 5

*Liteky v. U.S.*,
  510 U.S. 540 (1994) ............................................................................. 10, 11

*Nobby Lobby, Inc. v. City of Dallas*,
  767 F. Supp. 801 (N.D. Tex. 1991) ............................................................. 4

*Nobby Lobby, Inc. v. City of Dallas*,
  970 F.2d 82 (5th Cir. 1992) ......................................................................... 4

*Pakdel v. City and County of San Francisco, California*,
  594 U.S. 474 (2021) ................................................................................ 5, 6

*Ryan v. Commodity Futures Trading Comm'n*,
  125 F.3d 1062 (7th Cir. 1997) (Posner, J., in chambers) ........................... 2

*United States v. State of Mich.*,
  940 F.2d 143 (6th Cir. 1991) ....................................................................... 1

*Voices for Choices v. Illinois Bell Tel. Co.*,
   339 F.3d 542 (7th Cir. 2003) (Posner, J., in chambers) .................................... 1, 2

*Williamson County Regional Planning Commission v. Hamilton Bank
   of Johnson County*,
   473 U.S. 172 (1985) ....................................................................................... 5

**Statutes**

42 U.S.C. § 1983 ..................................................................................... 4, 5, 6

**Court Rules**

Fed. R. App. P. 29 ................................................................................ 1, 2, 3, 14

**INTRODUCTION**

A motion for leave to file an amicus brief must state "(A) the movant's interest; and (B) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(a)(3). The amicus also must disclose whether other parties or groups contributed to the brief. Fed. R. App. P. 29(a)(4)(E). Failure to make those disclosures requires that leave to file the briefs be denied. *Fharmacy Recs. v. Nassar*, 465 F. App'x 448, 451 n.1 (6th Cir. 2012).

Assuming the amicus passes this hurdle, the Court has discretion to accept an amicus brief where "the proffered information of amicus is timely, useful, or otherwise necessary to the administration of justice." *United States v. State of Mich.*, 940 F.2d 143, 165 (6th Cir. 1991) (citation omitted). "An *amicus curiae* brief which brings relevant matter to the attention of the Court that has not already been brought to its attention by the parties is of considerable help to the Court," but an "*amicus curiae* brief which does not serve this purpose simply burdens the staff and facilities of the Court and its filing is not favored." Fed. R. App. P. 29, Committee Notes on Rules—1998 Amendment (quoting Sup. Ct. R. 37.1). The Court need decide "whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." *Voices for Choices v. Illinois Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (Posner, J., in

chambers). That is more likely to happen where a party is "inadequately represented," where "the would-be amicus has a direct interest in another case that may be materially affected by a decision in this case," or where "the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Id.*

Absent those special circumstances, "leave to file an amicus curiae brief should be denied." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (Posner, J., in chambers). Leave should also be denied where amicus briefs are "used as a means of evading the page limitations on a party's briefs." *Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003). And leave should be denied when "the proposed amicus briefs merely announce the 'vote' of the amici on the decision of the appeal." *Voices for Choices*, 339 F.3d at 545.

## ARGUMENT

The Court should reject the Government Law Section's ("GLS") proposed amicus brief. First, GLS has not fulfilled its disclosure requirements under Rule 29(a)(4)(E). Second, GLS's brief is not helpful. GLS fails to address key District Court rulings that cut against its positions, flatly misrepresents others, and relies upon outdated and disavowed case law. GLS's disdain for the constitutional analysis of zoning laws, and for the District Court itself, is caustic and offers no help to this

Court's analysis of the issues. Accepting its brief would frustrate, not assist, judicial decision-making.

## A. GLS has not fulfilled its disclosure requirements.

GLS certified that "[n]o counsel for a party authored this Brief in whole or in part. No counsel or party made a monetary contribution to the preparation of this Brief." (Case 25-1705, Doc. 46, p. 10 n.1.) Federal Rule of Appellate Procedure 29(a)(4)(E), however, requires that GLS should have further disclosed whether "a person—other than the amicus curiae, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief and, if so, identifies the person." GLS's failure to comply with Rule 29(a)(4)(E) warrants striking its proposed brief. *See Fharmacy Recs.*, 465 F. App'x at 451 n.1.

## B. Constitutional claims are not "fallback" claims.

GLS suggests that a property owner somehow errs by asserting what GLS considers "less conventional (some might say 'fallback') claims: vagueness, preemption, compelled speech, freedom of speech, freedom of association, freedom of religion, and others. Even a Dormant Commerce Clause claim." (Doc. 46, p. 12.) GLS asserts that Constitutional rights need take a backseat to local zoning ordinances and that when courts focus on Constitutional rights courts move "away from" more important zoning concerns. (*Id.*)

Constitutional rights do not take a back seat to, and are certainly not less important than, local zoning ordinances. The suggestion that a local zoning ordinance may violate the Constitution "completely lacks merit." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 93 (5th Cir. 1992). That argument "is so devoid of legal foundation as to be frivolous, and its attempt to exalt the [the local government's interests] over the [United States] Constitution is fatuous." *Id*. (quoting *Nobby Lobby, Inc. v. City of Dallas*, 767 F. Supp. 801, 820 (N.D. Tex. 1991)). To suggest otherwise is a "constitutionally offensive argument …." *Nobby Lobby*, 767 F. Supp. at 820. GLS might be correct in assuming that traditional challenges to local zoning ordinances do not implicate Constitutional rights, but that does not warrant GLS so casually putting Constitutional rights with the children in the back seat of the car while only GLS-approved adults sit up front.

**C.    GLS's exhaustion argument is presumed on a disavowed standard.**

GLS's argument that the Wineries should have gone through Peninsula Township's administrative process to seek amendment of their permits shows a misunderstanding of the current law and so it does not help the analysis.

The Supreme Court is unequivocal: Section 1983 does not require a plaintiff to run the gauntlet of local processes before asserting its Constitutional rights. "The Civil Rights Act of 1871 … guarantees 'a federal forum for claims of unconstitutional treatment at the hands of state officials,' and the settled rule is that

4

'exhaustion of state remedies is *not* a prerequisite to an action under 42 U.S.C. § 1983.'" *Knick v. Twp. of Scott, Pennsylvania*, 588 U.S. 180, 185 (2019) (quoting *Heck v. Humphrey*, 512 U.S. 477, 480 (1994)) (emphasis in original).

GLS primarily relies on *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson County*, 473 U.S. 172 (1985), and cases following that decision. But that case was based on the "Court's since-disavowed prudential rule that certain takings actions are not 'ripe' for federal resolution until the plaintiff 'seek[s] compensation through the procedures the State has provided for doing so.'" *Pakdel v. City and County of San Francisco, California*, 594 U.S. 474, 476-77 (2021). Upholding a rule to the contrary "would conflict with the general rule that plaintiffs may bring constitutional claims under § 1983 without first bringing any sort of state lawsuit." *Id*. (cleaned up).

In *Pakdel*, 594 U.S. at 476-77, the Court stated that the lower court had erred when it held that "*Knick* left untouched *Williamson County's* alternative holding that plaintiffs may challenge only 'final' government decisions" and that "petitioners' regulatory takings claim remained unripe …." 594 U.S. at 477 (cleaned up).

Instead, "[t]he finality requirement is relatively modest. All a plaintiff must show is that there is no question about how the regulations at issue apply to the particular land in question." *Id*. at 478 (cleaned up). "The rationales for the finality requirement underscore that nothing more than *de facto* finality is necessary. This

5

requirement ensures that a plaintiff has actually been injured by the Government's action and is not prematurely suing over a hypothetical harm." *Id*. at 479 (internal quotation omitted). "Once the government is committed to a position … these potential ambiguities evaporate and the dispute is ripe for judicial resolution." *Id*.

An approach "that a conclusive decision is not 'final' unless the plaintiff *also* complied with administrative processes in obtaining that decision—is inconsistent with the ordinary operation of civil-rights suits. [Section 1983] 'guarantees a federal forum for claims of unconstitutional treatment at the hands of state officials.'" *Id*. (quoting *Knick*, 588 U.S. at 185) (emphasis in original). "That guarantee includes 'the settled rule' that 'exhaustion of state remedies is *not* a prerequisite to an action under § 1983.'" *Id*. (cleaned up, emphasis in original). A "demand that a plaintiff seek 'an exemption through the prescribed state procedures' … plainly requires exhaustion." *Id*. (cleaned up). The Court's holding in *Pakdel* is clear that "once the government has adopted its final position," a § 1983 claim becomes ripe, and "ordinary finality is sufficient." *Id*. at 480-81.

In *Catholic Healthcare International, Inc. v. Genoa Charter Township., Michigan*, this Court reversed a district court which adopted the position argued by GLS here. This Court explained:

> The district court's mistake was to conflate ripeness (sometimes called "finality" in this context) and exhaustion. Specifically, the court reasoned that "only if the local regulatory process was exhausted will a court know precisely how a regulation will be applied to a particular

6

> parcel or use." That was the same mistake the Ninth Circuit made in *Pakdel*. Ripeness, in the land-use context, requires only a "relatively modest" showing that the "government is committed to a position" as to the strictures its zoning ordinance imposes on a plaintiff's proposed land use. Ripeness does not require a showing that "the plaintiff *also* complied with administrative process in obtaining that decision." Yet that was the showing the district court demanded here.

82 F.4th 442, 488 (6th Cir. 2023) (cleaned up).

Peninsula Township was certainly committed to its position that the applicable ordinances applied to and should be enforced against the Wineries. Peninsula Township took that position before the District Court and this Court made that same conclusion. (R. 142, Page ID ## 4974-4975; R. 143, Page ID # 5351; R. 162, Page ID #5984, nn.4-6.) The District Court concluded that "[t]he record here … shows … pervasive enforcement of the PTZO by the Township and an attempt by the Wineries to remedy these issues prior to filing suit. These circumstances demonstrate a concrete factual scenario for the Court to work with, and forgoing adjudication now will likely amount to a refiled action in the near future. This Court will not employ the finality doctrine because it would be futile and would likely make waste of the parties' and court's resources." (R. 518, Page ID # 20733.)

The District Court continued, "the Wineries operating under an SUP sought and received a determination from the Township sufficient for this Court to find a 'definitive position' as to 'how the regulations at issue apply to the particular land in question.'" (*Id.* at Page ID # 20734 (quoting *Pakdel*, 594 U.S. at 478).) The

District Court then spent three pages providing examples of the Township taking definitive positions as to the application of the various ordinances to the Wineries. (*See id.* at Page ID ## 20734-20736.)

Because the Township took the position that the ordinances at issue applied to the Wineries' land uses, there was no other administrative process for the Wineries to go through. The Wineries are challenging the constitutionality of the ordinances, and, under Michigan law, a government agency cannot rule on constitutional claims. *See Houdini Props., LLC v. Romulus*, 743 N.W.2d 198 (Mich. 2008) ("The zoning board of appeals did not have jurisdiction to decide the plaintiff's substantive due process and takings claims."). Even if the Wineries had brought their grievances to the ZBA and appealed an adverse decision to the local circuit court, that court would also be without jurisdiction to hear the constitutional issues because it sits as a court of appeals and is limited to deciding issues for which the ZBA had jurisdiction. *Jon Jon's Inc. v. City of Warren*, 534 F. App'x 541, 544 (6th Cir. 2013).

GLS's arguments rest on a myopic view of garden-variety zoning claims being litigated in state courts following administrative processes without any appreciation for constitutional challenges. Because GLS's brief is premised on a misunderstanding of the law, it is not helpful.

8

### D. GLS ignores the District Court's opinion finding that the Wineries had not agreed to forgo challenges to their permits.

GLS's argument that the Wineries received their permits and thereby implicitly agreed to not challenge their constitutionality, (Doc. 46, p. 21), is wrong and the District Court properly rejected the same argument below:

> The Court finds that the SUPs that Plaintiffs are subject to are not contractual agreements. "A valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 871 (Mich. 2016). The SUPs are not supported by consideration. "To have consideration there must be a bargained-for exchange"; "there must be a benefit on one side, or a detriment suffered, or service done on the other." *Id*. When the Township approved the SUPs for the Wineries, there was no bargained-for exchange. After the approval of each Winery's respective SUP, the Wineries were then permitted to engage in certain commercial activities that otherwise would not be permitted. However, it is unclear what the Township has received from issuing the SUPs. There does not appear to be any bargained-for exchange that would meet the consideration requirement of a valid contract. See *Trevino & Gonzalez Co. v. R.F. Muller Co.*, 949 S.W.2d 39, 42 (Tex. Ct. App. 1997) ("When a building permit is issued, none of the elements of a contract are present. There is no offer, no acceptance, and no consideration."); *Forest Serv. v. Emps. For Env't Ethics v. U.S. Forest Serv.*, 689 F. Supp. 2d 891, 903 (W.D. Ky. 2010) (holding that despite the parties classifying their agreements as "contracts," "the plain meaning of the documents [is] that these 'contracts' were intended to be special-use permits," and identifying the difference between permits and contracts).

(R. 162, Page ID # 5994.) GLS fails to address this ruling whatsoever in its brief and simply repeats the Township's position argued years ago. GLS is not being helpful to this Court by ignoring the District Court's opinion.

9

**E. GLS's attacks on the District Court's "values" are not helpful.**

The District Court presided over this action for five years and heard the parties at great length, concluding with a ten-day bench trial, thousands of pages of exhibits, hundreds of pages of post-trial briefs, and a seventy-five-page bench opinion. At the end, the District Court largely (but not entirely) sided with the Wineries.

GLS argues that the District Court has "little personal background and experience in the zoning process," thus elevating its attacks to the person of the District Court, argues that the District Court was "nakedly cynical," used "derogatory words," "insert[ed] itself" into the parties' dispute and expressed its own "value judgment" in the matter. (Doc. 46, p. 24.) GLS's rhetoric is incompatible with the neutral, informative role an amicus is intended to play; GLS seeks to inflame, not inform. Shorn of its vitriol, the GLS demonstrates that it seemingly misunderstands what happens during a bench trial and the role of the judiciary in deciding contested issues.

As the Supreme Court has explained:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

*Liteky v. U.S.*, 510 U.S. 540, 550-51 (1994).

That the District Court expressed its opinions on the parties, their motivations, their conduct and the merits of the case after a bench trial is unremarkable and no court is biased because it hears evidence and decides its mind. "If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *Id*. While the District Court may not have thought much of how a local government conducted itself, GLS can hardly claim that the court thereby acted improperly. A trial judge is expected to, and must, form judgments.

**F.     GLS misrepresents the District Court's vagueness ruling.**

GLS contends that the court "did not actually find that the term 'Guest Use Activity' was vague so much as it found that the Township officials were not particularly consistent in applying it." (Case No. 25-1705, Doc. 46, p. 27.) Either GLS did not review the record before writing its brief or GLS ignored the record.

In June 2022, the District Court granted summary judgment, finding that the phrase "Guest Activity Use" was vague; in doing so, the court discussed the deposition testimony of Township officials regarding that phrase. (R. 162, Page ID ## 6016-6019.) The following month, it denied a motion to reconsider, wherein the Township argued the District Court's vagueness finding was erroneous because the court "should have *only* looked at the text of the Ordinance on its face, rather than the depositions of the Township representatives who testified about the

11

interpretation of 'Guest Activity Use.'" (R. 211, Page ID # 7812 (emphasis in original).)

The District Court responded: "First, the Court finds that it correctly reviewed the deposition testimony of the Township representatives as a tool of statutory interpretation because their testimony established the Township's varying interpretations of the definition of 'Guest Activity Use.'" (*Id.*) The District Court, however, then found that it need not have reviewed any deposition testimony because the ordinance was vague on its face:

> even if the Court only reviewed the text of the Ordinance on its face, the term is clearly vague. "Guest Activity Use" is defined as "Activities by persons who may or may not be registered guests." See § 8.7.3(10)(u)(2). It is not necessary for the Court to utilize tools of statutory interpretation to find that this definition, which encompasses quite literally all activities (activities that do involve registered guests as well as activities that do not involve registered guests), is vague. And although the Township asserts that the activities listed—wine and food classes, cooking classes, meetings of non-profit groups, and meetings of agricultural groups—are the only permissible Guest Activity Uses, the Township Ordinances fail to state that this list of Guest Activity Uses is exhaustive. The Court thus rejects the Township's arguments regarding the vagueness of the term "Guest Activity Use."

(*Id.*, Page ID ## 7812-7813.)

Several months later, in addressing a series of motion that PTP filed, the District Court again explained that "[l]ooking at the Township Ordinances on their face, the term 'Guest Activity Use' is vague, and it is unconstitutional for the reasons that the Court has previously articulated …." (R. 301, Page ID # 10698.) In later

addressing yet another motion to reconsider, the District Court was again unequivocal:

> In addition to the thorough analysis in the June 3 Order, the Court has now visited the issue of whether the term "Guest Activity Use" is vague on its face twice before (*see* ECF No. 211 at PageID.7813) ("[Even if the Court only reviewed the text of the Ordinance on its face, the term ['Guest Activity Use'] is clearly vague."); (ECF No. 301 at PageID.10698) ("Looking at the Township Ordinances on their face, the term "Guest Activity Use" is vague, and it is unconstitutional for the reasons that the Court has previously articulated."). For the third time, the definition of "Guest Activity Use" is vague on its face, and therefore, violates the Due Process Clause. The Court does not need PTP to provide context to any Township representatives' deposition testimony because the term is vague on its face.

(R. 319, Page ID # 11889.)

Thus, the District Court expressly found the phrase "Guest Activity Use" vague four times and clarified three times that the phrase was vague on its face. GLS's arguments on this point are not helpful because GLS either failed to read, or ignored, four of the District Court's rulings on this issue: R. 162, R. 211, R. 301 and R. 319.  For GLS to misrepresent to this Court that the District Court "did not actually find the term 'Guest Activity Use' was vague" is, charitably, questionable.

## CONCLUSION

GLS's proposed amicus brief is riddled with misrepresentations and ignorance of the record and applicable caselaw.  An amicus brief that misstates the law, introduces factual inaccuracies and attacks the lower court does nothing and imposes

13

administrative cost that Rule 29 is designed to prevent. The Court should deny GLS leave to file its amicus brief.

                Respectfully submitted,

                MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

                By: /s/ Joseph M. Infante
                    Joseph M. Infante (P68719)
                    Stephen M. Ragatzki (P81952)
                    Christopher J. Gartman (P83286)
                    99 Monroe Avenue NW, Suite 1200
                    Grand Rapids, Michigan 49503
                    (616) 776-6333
                    infante@millercanfield.com
                    ragatzki@millercanfield.com
                    gartman@millercanfield.com

Dated: February 23, 2026       ***Attorneys for Plaintiffs/Appellees/Cross-Appellants***

14

## CERTIFICATE OF COMPLIANCE

I certify that this 3,383-word brief complies with the Court's type-volume limitations.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: /s/ Joseph M. Infante
　　Joseph M. Infante (P68719)
　　Stephen M. Ragatzki (P81952)
　　Christopher J. Gartman (P83286)
　　99 Monroe Avenue NW, Suite 1200
　　Grand Rapids, Michigan 49503
　　(616) 776-6333
　　infante@millercanfield.com
　　ragatzki@millercanfield.com
　　gartman@millercanfield.com
　　*Attorneys for Plaintiffs/Appellees/Cross-Appellants*

Dated: February 23, 2026

## CERTIFICATE OF SERVICE

I certify that on February 23, 2026, I electronically filed this document with the Clerk of the Court using the ECF system, which will send notification of the filing to all ECF filing participants.

    Respectfully submitted,

    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

    By: /s/ Joseph M. Infante
        Joseph M. Infante (P68719)
        Stephen M. Ragatzki (P81952)
        Christopher J. Gartman (P83286)
        99 Monroe Avenue NW, Suite 1200
        Grand Rapids, Michigan 49503
        (616) 776-6333
        infante@millercanfield.com
        ragatzki@millercanfield.com
        gartman@millercanfield.com
        *Attorneys for Plaintiffs/Appellees/Cross-Appellants*

Dated: February 23, 2026

45682132.2/159392.00002