Nos. 25-1703, 25-1705, 25-1754
_____

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT
_____

Wineries of the Old Mission Peninsula Association; Bowers Harbor
Vineyard & Winery, Inc.; Brys Winery, LC; Chateau Grand Traverse,
Ltd.; Chateau Operations, Ltd.; Grape Harbor, Inc.; Montague
Development, LLC; OV the Farm LLC; Tabone Vineyards, LLC; Two
Lads, LLC; Villa Mari, LLC; Winery at Black Star Farms LLC;
Chateau Operations, Ltd.,

Plaintiffs – Appellees [25-1703/25-1705]/Cross-Appellants [25-1754],

v.

Township of Peninsula, MI,

Defendant – Appellant [25-1703]/Cross-Appellee [1754], and

Protect the Peninsula, Inc. (25-1705/25-1754),
Intervenor – Appellant [25-1705]/Cross-Appellee [25-1754].
_____

Appeal from the United States District Court
for the Western District of Michigan
No. 1:20-cv-1008 (Hon. Paul L. Maloney)
_____

**BRIEF AMICI CURIAE OF HOOPES FAMILY WINERY
PARTNERS, LP; HOOPES VINEYARD, LLC; AND
LINDSAY BLAIR HOOPES IN SUPPORT OF PLAINTIFFS-
APPELLEES/CROSS APPELLANTS AND AFFIRMANCE**
_____

STEPHEN S. DAVIS
BRIDGET F. CONLAN
  Pacific Legal Foundation
  3100 Clarendon Boulevard, Ste. 1000
  Arlington, VA 22201
  Telephone: (202) 888-6881
  sdavis@pacificlegal.org
  bconlan@pacificlegal.org
*Attorneys for Amici Curiae*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 25-1703, 1705, 1754    Case Name: Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula, MI, et al.

Name of counsel: Stephen S. Davis, Bridget F. Conlan

Pursuant to 6th Cir. R. 26.1, Amici Curiae Hoopes Family Winery Partners, LP, Hoopes Vineyard, LLC, Lindsay Blair Hoopes

*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

None of the amici curiae are subsidiaries or affiliates.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

Not to the knowledge of amici's counsel.

### CERTIFICATE OF SERVICE

I certify that on _____ April 24, 2026 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Stephen S. Davis
Pacific Legal Found., 3100 Clarendon
Blvd, Ste 1000, Arlington, VA 22201

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

**Page(s)**

DISCLOSURE STATEMENT ........................................................................i

TABLE OF AUTHORITIES ...................................................................... iii

IDENTITY AND INTEREST OF AMICI CURIAE ..................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ...........................2

ARGUMENT ..............................................................................................4

    I.  The judiciary's essential role protecting property owners from abusive government actions.........................................................4

    II. Absent judicial review, governments may be incentivized to profit from overzealous enforcement .......................................7

    III. Damages are an appropriate remedy for civil rights and constitutional violations..................................................................11

CONCLUSION ..........................................................................................14

CERTIFICATE OF COMPLIANCE ........................................................15

CERTIFICATE OF SERVICE..................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Cnty. Rd. Comm'rs of Wayne Cnty. v. GLS LeasCO, Inc.*,
394 Mich. 126 (1975) ...................................................................................13

*Cedar Point Nursery v. Hassid*,
594 U.S. 139 (2021) ....................................................................................... 4

*Childrens' Home, Inc. v. State Hwy. Bd.*,
125 Vt. 93 (1965) ..........................................................................................12

*Cortez v. Trans Union, LLC*,
617 F.3d 688 (3d Cir. 2010) .........................................................................12

*Denver Joint Stock Land Bank v. Bd. of Comm'rs of Elbert Cnty.*,
105 Colo. 366 (1940) .....................................................................................13

*Dep't of Public Works and Bldgs. v. Sun Oil Co.*,
66 Ill. App. 3d 64 (1978) ..............................................................................13

*Hoopes Vineyard, LLC v. County of Napa*, Nos. 25-2715,
25-3903, 2026 WL 983123 (9th Cir. Apr. 13, 2026) ................................... 8

*Leonard v. Stemtech Int'l Inc.*,
834 F.3d 376 (3d Cir. 2016) .........................................................................12

*Minnesota v. Barber*,
136 U.S. 313 (1890) ....................................................................................... 7

*Mugler v. Kansas*,
123 U.S. 623 (1887) ....................................................................................... 6

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
156 F.4th 1289 (Fed. Cir. 2025)...................................................................11

*Rivera v. V.I. Housing Auth.*,
854 F.2d 24 (3d Cir. 1988) ...........................................................................12

*Shapiro v. Maryland-National Cap. Park and Planning Comm'n*,
    235 Md. 420 (1964) ................................................................... 12

*Thabault v. Chait*,
541 F.3d 512 (3d Cir. 2008) ............................................................ 12

*Wineries of the Old Mission Peninsula Ass'n v. Peninsula Township*,
    No. 1:20-CV-1008, 2025 WL 1859905 (W.D. Mich. Jul. 7, 2025) ......3–6

## Other Authorities

Complaint, *Hoopes Vineyard LLC v. County of Napa*,
    Civ. No. 3:24-cv-06256-CRB (N.D. Cal. Sep. 5, 2024) ............................ 2

*Discourses on Davila, in* 6 *Works of John Adams* 280 (C
    Adams ed. 1851) ................................................................... 4

# IDENTITY AND INTEREST OF AMICI CURIAE[1]

Amici Hoopes Vineyard[2]—a small family winery located in the southern Napa Valley, California—is participating in this case because it is intimately familiar with a municipality using similar land use and zoning enforcement tools in a vague and unconstitutional manner. Like the small wineries in this case, Hoopes Vineyard, unfortunately, is on the receiving end of a local government using its land use enforcement mechanisms as a cudgel, as the district court held Peninsula Township did here. In October 2022, Napa County sued Hoopes Vineyard and Lindsay Hoopes individually, claiming the winery violated a multitude of zoning regulations by doing things like hanging string lights and hosting wine tastings and yoga classes, after which a California trial court

---

[1] Pursuant to Federal Rule of Appellate Procedure 29, no party's counsel authored this brief in whole or in part, no party or party's counsel contributed money intended to fund preparation or submission of the brief, and no person or entity—other than Pacific Legal Foundation, its donors, or its counsel—contributed money intended to fund preparation or submission the brief. Amici have concurrently filed a Motion for Leave to File this amicus brief.

[2] Hoopes Family Winery Partners, LP owns the Oasis by Hoopes—a winery—which is operated by Hoopes Vineyard, LLC, and Lindsay Blair Hoopes. Amici are collectively referred to as "Hoopes Vineyard" or "Hoopes."

imposed an eye-watering $3,960,013 in fines and penalties (including the hourly fees of the private attorneys hired by the County to represent it). The court imposed these fines jointly and severally against all amici (including against Ms. Hoopes personally)—an amount which will bankrupt all three of them. When asked at a hearing whether this was a concern, the County's lawyer responded that Hoopes should "welcome bankruptcy." Separately, Hoopes Vineyard instituted a federal lawsuit which asserts claims similar to the wineries in this case, challenging Napa County's land use regulations that mirror those of Peninsula Township. *See* Complaint, *Hoopes Vineyard LLC v. County of Napa*, Civ. No. 3:24-cv-06256-CRB (N.D. Cal. Sep. 5, 2024).

Hoopes Vineyard believes that its experiences suffering under substantially similar winery and land use restrictions uniquely position it to provide valuable insight to this Court.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case is about a local government arbitrarily penalizing owners of private property with irrationally restrictive and draconian zoning regulations not related to the community's health, safety, and welfare. Following an eleven-day trial, the district court held the Township liable

for "repeatedly and pervasively" violating the wineries' constitutional rights. *Wineries of the Old Mission Peninsula Ass'n v. Peninsula Township*, No. 1:20-CV-1008, 2025 WL 1859905, at \*26 (W.D. Mich. Jul. 7, 2025). The court awarded $49 million for the damages which resulted from the Township's "arbitrary enforcement" of "an impossible to understand [zoning] ordinance . . . ." *Id.* at \*27. This Court should affirm the district court's award of civil rights damages under section 1983 which reflect actual, proven harm to small businesses.

This brief makes three main points:

1.     The district court's consideration of this case is an excellent example of the judiciary fulfilling its essential role as a bulwark against abusive government actions under the guise of the police power.

2.     Absent such review, zoning enforcement may devolve into an arbitrary and capricious exercise, as Hoopes Vineyard's experience demonstrates.

3.     Damages is an appropriate remedy to prevent government abuse and to make civil rights plaintiffs whole.

# ARGUMENT

## I. The judiciary's essential role protecting property owners from abusive government actions

One of government's main purposes is to protect private property. *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) ("The Founders recognized that the protection of private property is indispensable to the promotion of individual freedom. As John Adams tersely put it, '[p]roperty must be secured, or liberty cannot exist.'") (quoting *Discourses on Davila*, *in* 6 *Works of John Adams* 280 (C. Adams ed. 1851)). Here, the district court concluded that the Township was bent on doing the exact opposite. After a trial at which the Township was afforded every opportunity to introduce evidence that its hyper-aggressive enforcement was compelled by protection of the public's health, safety, or welfare, the court underscored, "[t]he problem is that every one of the remaining [zoning ordinance] provisions makes operating a farm or winery more difficult" because "farms and wineries need alternate revenue streams to survive," and "the alternative to operating a failing business is selling the farmland for residential development." *Wineries of the Old Mission Peninsula*, 2025 WL 1859905, at *24.

The district court found "[a]ll of" the Township's officials' evidence and testimony at summary judgment and at trial "conclusory, and none of it was credible." *Id*. at \*23. The Township's evidence, the court added, "contradicted the testimony" of the intervenor-defendant's expert. *Id*. Based upon the evidence throughout the litigation and at trial, the court concluded, "The [zoning ordinance] provisions do not advance the Township's interest in maintaining rural character or keeping land in agriculture . . . [and t]he record does not show that the regulations directly advance the Township's purported interests." *Id*. at \*24–25. In all, "[t]he court [found] that the Township could offer government interests in the enforcement of the [zoning ordinance]. However, the Township could not show that the [zoning ordinance] advances those interests or that the [zoning ordinance] was narrowly tailored to achieve those interests." *Id*. at \*26.

Here, the district court gave the parties ample opportunity to present their cases and thoroughly considered the provided evidence. In addition to pre-trial rulings, the district court held an eleven-day bench trial, hearing detailed testimony from 15 witnesses, including 12 fact witnesses and 3 expert witnesses, about the confusion caused by the

5

ordinances, their inconsistent enforcement, and the precise economic effect and impact the Township caused. The Township was provided every opportunity to defend its policies, but could not even provide consistent answers or a credible witness, demonstrating that even the Township was confused by its own ordinance. The district court's thorough consideration of the evidence resulted in a 75-page opinion setting forth findings of fact and conclusions of law assessing the Township's evidence and lack of credibility. In the end, the court found that the "Township could not show that the [zoning ordinance] advances [the Township's] interests or that the [zoning ordinance] was narrowly tailored to achieve those interests." *Wineries of the Old Mission Peninsula*, 2025 WL 1859905, at \*26.

It is vital that courts—as the district court did here—hold the government accountable for abusive enforcement of constitutionally infirm ordinances. *See, e.g.*, *Mugler v. Kansas*, 123 U.S. 623, 661 (1887) ("If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge,

and thereby give effect to the constitution."); *Minnesota v. Barber*, 136 U.S. 313, 320 (1890) ("[T]he judiciary must obey the constitution, rather than the law-making department of the government, and must, upon its own responsibility, determine whether, in any particular case, the limits of the constitution have been passed[.]").

**II.  Absent judicial review, governments may be incentivized to profit from overzealous enforcement**

Judicial hesitancy can encourage local governments to abuse the land use enforcement process for monetary gain. When owners are unable to bring a federal civil rights case, they are left vulnerable to the government's enforcement process, putting them under threat of massive fines, discouraging self-defense, and withholding the opportunity for a jury trial. Napa County's action against Hoopes Vineyard provides a stark example of what happens when a court fails its essential duty.

Napa County's winery regulations mirror those of Peninsula Township. Much like the Township, Napa restricts commercial speech and events, disallowing the "marketing" of wine through tours and tastings, and ignoring that the State Alcoholic Beverage Control has expressly regulated and permits these activities. Napa also restricts the sale of non-local products and enforces local grape-source requirements

similar to those of Peninsula Township. Napa arbitrarily enforces an ever-changing patchwork of largely undocumented policies, such that no winery can be sure of what they are permitted to do. Napa targeted Hoopes for activities that are commonplace at wineries throughout the area, with no explanation for why Hoopes was singled out.

Hoopes never got the chance to have its constitutional claims properly adjudicated, because Napa sued them first in an aggressive zoning enforcement action.[3] When Hoopes attempted to add the constitutional claims to their cross complaint in state court, Napa County fought to keep those claims out and successfully did so in the trial court. If Napa County has its way, no court will ever review its land use regulations.

---

[3] When Hoopes and two other similar wineries brought suit in federal court, Napa argued for abstention from all three wineries' claims based on the ongoing enforcement action brought solely against Hoopes in state court. The district court agreed and dismissed the wineries' claims. On appeal, the Ninth Circuit reversed the district court's finding of abstention and remanded the case, allowing the claims of the other wineries to go forward, but leaving out most of Hoopes' claims due to the state enforcement action, assuming that Hoopes' constitutional claims can be heard in state court. *Hoopes Vineyard, LLC v. County of Napa*, Nos. 25-2715, 25-3903, 2026 WL 983123 (9th Cir. Apr. 13, 2026).

Napa County pursued for-profit prosecution of the Hoopes Vineyard, to line their pockets with millions in penalties. Napa County initially sought over $8 million in penalties from Hoopes, and at one point during the litigation Napa contended that the maximum calculation would have been $60 million in penalties, plus millions in attorney fees. The superior court ultimately ordered Hoopes to pay nearly $4 million, including over $2 million in attorney fees.

Napa does not pay the price for its zealous overenforcement; they hire private attorneys and force defendants to foot the bill for their own prosecution. Even if a defendant feels they have a good defense, the risk of being required to pay exorbitant attorney fees (on top of the costs of defending oneself) is not one that a small business or homeowner can afford to take. Knowing this, the government uses the power imbalance to their advantage. Hoopes asked (repeatedly) for an administrative hearing, which would have been a low-cost and efficient means of adjudicating the dispute. But Napa County denied them one and instead chose to pursue the most expensive method of enforcement, unilaterally demanding that Hoopes foot the bill for the more expensive option.

Napa County's relentless persecution of Hoopes has demonstrated that the government cannot be trusted to use common sense and self-police its own power; given the opportunity they will gleefully bankrupt a small winery through aggressive enforcement of an unconstitutional ordinance—and stand to profit in doing so. This Court should not be afraid to double down in correcting this power imbalance through the imposition of significant penalties.

Even if Hoopes ultimately prevails, the prolonged litigation itself has already caused irreversible damage to Hoopes. Hoopes has struggled to keep the business afloat over the course of Napa County's lawsuit and was forced to sell a different vineyard property that had been in the family for 40 years, and their family home, to fund their own attorney fees and pay down the small business loan which was called in early due to concerns from investors about the ongoing litigation. The enforcement action forced Hoopes to focus on the litigation instead of selling wine for many years, and added to the uncertainty about what revenue channels they could pursue without drawing further ire from Napa County— including revenue channels that are commonplace and necessary to all competitor and neighboring wineries.

The breadth of these oppressive regulatory schemes cannot be overstated; local governments must be held accountable and not afforded special treatment because of supposed budgetary issues. The devastation wrought by Napa County's weaponization of similar regulations is proof positive that significant damages are necessary to deter local governments from pursuing zealous enforcement of such regulations. The threat of having their regulations struck down is not sufficient.

## III. Damages are an appropriate remedy for civil rights and constitutional violations

The amount of the damages imposed against Peninsula Township, so long as the district court did not abuse its discretion in calculating them, is irrelevant. *See Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1296 (Fed. Cir. 2025) ("We review a district court's decision concerning the methodology for calculating damages for an abuse of discretion. The Supreme Court has explained that the trial judge plays a 'gatekeeping role,' through which it must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. [W]here the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case, the gatekeeping role of the

11

court is satisfied.") (internal citations and quotations omitted).[4] Even if a government struggles to find the cash to pay just compensation, this has no bearing on its constitutional obligation to do so. *See Childrens' Home, Inc. v. State Hwy. Bd.*, 125 Vt. 93, 99 (1965) ("The fact as to which government, state or federal, had to bear the burden of paying the final award in this case had no proper place in the proceedings. . . . It had no relevancy and tended to obscure the issue of just compensation by introducing the extraneous matter concerning the source of the funds."); *Shapiro v. Maryland-National Cap. Park and Planning Comm'n*, 235 Md. 420, 427 (1964) ("the source of funds which will pay for the land taken is not material or an issue in these cases"). For this reason, courts preclude

---

[4] *See also Cortez v. Trans Union, LLC*, 617 F.3d 688, 718 (3d Cir. 2010) ("We reverse a district court's decision on compensatory damages and grant a new trial only if the verdict is 'so grossly excessive as to shock the judicial conscience.'" (quoting *Rivera v. V.I. Housing Auth.*, 854 F.2d 24, 27 (3d Cir. 1988))); *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 394 (3d Cir. 2016) ("The damages award was tethered to the record, which the jury was entitled to credit, and the jury was presented with no evidence that provided an alternative calculation. . . . [And] in light of our deferential standard of review, we conclude that the District Court did not abuse its discretion in denying a new trial on the basis of a grossly excessive jury verdict."); *Thabault v. Chait*, 541 F.3d 512, 532 (3d Cir. 2008) ("A jury's damages award will not be upset so long as there exists sufficient evidence on the record, which if accepted by the jury, would sustain the award.").

government counsel from telling jurors in valuation cases that their own tax dollars ultimately would pay any compensation due.[5]

Peninsula Township violated these landowners' constitutional rights, and it cannot now avoid its constitutional obligation to pay these owners because it would rather spend the money elsewhere. Following the district court's ruling in favor of the landowners and the filing of the Township's notice of appeal, the Township asked the court to "stay enforcement of the judgment and waive the requirement for bond while the case is on appeal." ECF No. 671 PageID.33148 (Op. and Order Granting Def.'s Mot. To Stay Enforcement and Waive Bond on Appeal, p. 1).

The damage award stemmed from and was calculated by measuring the actual damages the Township's arbitrary enforcement of its "impossible to understand" zoning ordinance inflicted upon the landowners. Granting the government inappropriately deferential reprieves encourages the government to persist in the kind of

---

[5] *See, e.g.*, *Dep't of Public Works and Bldgs. v. Sun Oil Co.*, 66 Ill. App. 3d 64, 68 (1978); *Bd. of Cnty. Rd. Comm'rs of Wayne Cnty. v. GLS LeasCO, Inc.*, 394 Mich. 126, 135 (1975); *Denver Joint Stock Land Bank v. Bd. of Comm'rs of Elbert Cnty.*, 105 Colo. 366, 368–69 (1940).

irresponsible and injudicious behavior exhibited by Peninsula Township and Napa County. Both Peninsula Township and Napa County have demonstrated precisely why it is vital that courts hold the government accountable for abusive enforcement of constitutionally infirm ordinances.

## CONCLUSION

This Court should affirm the district court's judgment holding Peninsula Township liable for violating the wineries' constitutional rights.

DATED: April 24, 2026.

Respectfully submitted,

s/ Stephen S. Davis
STEPHEN S. DAVIS
BRIDGET F. CONLAN
Pacific Legal Foundation
3100 Clarendon Boulevard, Ste. 1000
Arlington, VA 22201
Telephone: (202) 888-6881
Facsimile: (916) 419-7747
sdavis@pacificlegal.org
bconlan@pacificlegal.org

*Attorneys for Amici Curiae*

# CERTIFICATE OF COMPLIANCE

## Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B), because this brief contains 2,732 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14 point, Century Schoolbook.

DATED: April 24, 2026.

s/   Stephen S. Davis
STEPHEN S. DAVIS

**CERTIFICATE OF SERVICE**

I hereby certify that on April 24, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Stephen S. Davis
STEPHEN S. DAVIS